**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------X
CAROLINE RUIZ,

                     Plaintiff,

     v.

NEW AVON LLC and RAJ NATH, individually
and in his professional capacity,

                     Defendants.
---------------------------------------------------------------X

Civil Case No.:

**COMPLAINT**

**Jury Trial Demanded**

Plaintiff Caroline Ruiz ("Plaintiff"), as against Defendants New Avon LLC ("Avon") and Raj Nath ("Nath"), in his individual and professional capacity, alleges as follows:

## SUMMARY OF CLAIMS

1. Avon says it is "**the company for women**."

2. Avon distinguishes itself from mainstream companies based on its commitment to empowering women. Because of this branding, women spend millions of dollars on Avon products. Believing Avon's promise, countless women apply to work at Avon. Indeed, when Plaintiff accepted a position at Avon, the last thing she expected to experience was pregnancy discrimination. But that is exactly what happened and why Plaintiff was forced to seek accountability through the legal system.

3. Avon cannot claim to empower women at the same time that it undermines pregnant female employees.

4. Just **days** after Plaintiff disclosed her pregnancy to her male boss – she was fired.

5. When Plaintiff learned she was pregnant, she also found out that the pregnancy was high-risk and miscarriage a substantial concern. In connection with her doctors' advice to go on bed rest for <u>one week</u>, Plaintiff disclosed her pregnancy, and its high-risk status, to Avon.

6.    Shamefully, Avon responded to the news by terminating her employment.

7.    As detailed below, just three weeks into her job at Avon as Global Head of North America Indirect Procurement, Plaintiff learned she was pregnant. At her doctor's recommendation, Plaintiff requested to work remotely for <u>one week</u> to reduce her risk of miscarriage. Avon callously denied Plaintiff's request, and immediately began fabricating "performance issues" even though she had been on the job less than a month.

8.    Worse, despite her need to be on bed rest, Avon placed Plaintiff's health and the health of her unborn child in jeopardy by forcing her to travel into the Manhattan office against her doctor's orders, for the sole purpose of Avon executives having the opportunity to fire her in person. When Plaintiff dared to complain about this, Avon told her: "your health is not [a] concern, but your performance is."

9.    Avon reaps millions in profits from a female consumer base that undoubtedly believes Avon's "champion of women" mantra. Avon does not deserve such profit when it recklessly tramples on the reproductive health of its own female employees with impunity.

10.    While Avon is accounting for how it failed to comply with laws in place to protect pregnant women, Avon also needs to explain to its female base about **why the company "for women" actually is a company run by men.**

11.    Female consumers may be shocked when they click on the executive leadership link at Avon's site and see a group of white men staring back. The CEO, Jan Zijderveld, is a white male. The CFO, Jamie Wilson, is a white male. The COO, Jonathan Myers, is a white male. The Global President, Miguel Fernandez, is a white male. The list goes on.[1] Appallingly,

---

[1]    http://www.avoncompany.com/aboutavon/our-people/executiveleadership/index.html. As discussed *infra,* despite Avon's spin off of the North American market into a private limited liability company named "New Avon

of the 18 members on the Management Committee, just five are women.[2]  For a company that bases its entire brand on female empowerment, the fact that a mere 27% of the Management Committee is female is outrageous.  The CEO of New Avon LLC, Scott White, also is a white male.[3]  The CEO of the majority stakeholder in New Avon LLC, Cerberus Operations and Advisory Company, is Chan W. Galbato, also a white male.[4]

12.     The message to Plaintiff and all female employees is clear: only men, not women, are fit to steer the Avon ship.

13.     Men set the standards for workplace policies and guidelines at Avon, including protocols to comply with federal, state and city laws enacted to protect female employees from experiencing the unlawful treatment described in this complaint.[5]

14.     No female employee should endure the harm from insidious pregnancy bias.  Avon must be held accountable.

## JURISDICTION AND VENUE

15.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding the deprivation of Plaintiff's rights

---

LLC," any online search for information about New Avon, its leadership or corporate structure, automatically is redirected to Avon's site – www.avoncompany.com.

[2]     http://www.avoncompany.com/aboutavon/our-people/management-committee/index.html.  Equally horrific, just one member appears to be a person of color.

[3]     https://about.avon.com/company/board-of-managers/scott-white-bom.

[4]     https://about.avon.com/company/board-of-managers/chan-w-galbato.

[5]     The harm inflicted on female workers fired while pregnant is substantial.  Essentially side-lined from future employment for the rest of their pregnancy through childbirth, fired pregnant women lose medical coverage, often are forced to find new physicians in the middle of a pregnancy, and lose valuable safety nets from federal and state laws such as FMLA.  In a recent New York Time's article, *Pregnancy Discrimination is Rampant Inside America's Biggest Companies*, reporters Natalie Kitroeff and Jessica Silver-Greenberg detail the tangible career sidelining that pregnant employees experience, as well as the abhorrent bias that labels pregnant employees as unmotivated, less committed, less dependable and irrational. https://www.nytimes.com/interactive/2018/06/15/business/pregnancy-discrimination.html.

under Title VII and the ADA. The Court has supplemental jurisdiction over Plaintiff's related claims arising under State and local law pursuant to 28 U.S.C. § 1367(a).

16. Pursuant to 28 U.S.C. § 1391(b), venue is proper in this Court because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## PARTIES

17. Plaintiff Caroline Ruiz is a former employee of Avon who, at all relevant times, worked at Avon's One Liberty Plaza, New York, New York 10006 location. Plaintiff is a resident of the State of New York and, at all relevant times herein, met the definition of an "employee" under all relevant statutes throughout her employment with Defendants.

18. Defendant New Avon, LLC ("Avon") is a New York foreign limited liability company located at One Liberty Plaza, New York, New York 10006. Avon is the leading social selling beauty company in North America, with independent sales representatives throughout the United States, Puerto Rico and Canada. Avon's products include skincare, color cosmetics, fragrance and personal care products, and brands such as ANEW, Avon Color, mark., and Skin So Soft as well as fashion and accessories.

19. In December 2015, Avon Products Inc. ("AVP") spun its North American business, including Canada, into a limited liability company, controlled by Cerebus Capital Management. Although it renamed this company "New Avon," the company continues to brand itself as "Avon" in connection with its North American business and directs inquires to New Avon LLC to the site www.avon.com.

20. At all times relevant herein, Avon was and is an "employer" under all relevant statutes.

21.     Defendant Raj Nath is the Head of Sourcing, Executive Director at Avon. At all relevant times, Nath had the authority to discipline and fire Plaintiff, direct her work activities, assign her job responsibilities and monitor her performance. At all relevant times, Nath was an "employer" within the meaning of all applicable statutes.

## ADMINISTRATIVE PREREQUISITES

22.     On July 2, 2018, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

23.     On August 3, 2018, Plaintiff received a Notice of Right to Sue from the EEOC. Fewer than 90 days have passed since Plaintiff filed her Notice of Right to Sue.

24.     Following commencement of this action, a copy of this Complaint will be served upon both the New York City Commission on Human Rights and the New York City Law Department, Office of the Corporation Counsel, thereby satisfying the notice requirements of the New York City Administrative Code.

25.     Any and all other prerequisites to the filing of this suit have been met.

## FACTUAL ALLEGATIONS

26.     Plaintiff is an experienced procurement leader with an extensive background in Direct, Indirect and Capex procurement.

27.     Plaintiff holds three Masters degrees, including a degree in International Strategic Sourcing from the Bordeaux Business School in France as well as degrees in Chemistry and Engineering in Materials Technology from the Institut de Sciences et Technologie - Université Pierre et Marie Curie, France.

28.     For approximately six years, Plaintiff worked for Estee Lauder, starting as the Global Indirect Procurement Manager and working her way up to the Global Packaging and Indirect Procurement Lead.

29.     After Estee Lauder and prior to joining Avon, Plaintiff served as the Executive Director of Shiseido for approximately two years, where she was the Head of Indirect Procurement for the entire Americas region.

30.     Plaintiff was recruited aggressively by Avon to join the company as the Global Head of North America Indirect Procurement. She began work at Avon in early January 2018.

31.     During her first three weeks of employment, Plaintiff quickly learned that Avon employees routinely worked from home or away from the office.

32.     For example, Plaintiff's supervisor, Nath, often worked remotely.

33.     One of Plaintiff's direct reports, a male employee, worked remotely on a permanent basis, and Plaintiff only communicated with him through video conferences, phone and email.[6]

34.     Another one of Plaintiff's direct reports was permitted to work remotely for four weeks after the death of a family member.

35.     Working remotely was so widespread that one day, Plaintiff was the only member of her department to be physically in the office.

36.     As Plaintiff understood, her fellow Avon employees were not required to meet any formal in office work requirements.[7]

---

[6] Nath told Plaintiff that she had to "coddle" younger employees, including this direct report, and give them "love and care" so that they are happy. Upon information and belief, Nath never requested that a male employee provide "love" to a direct report.

[7] For example, one employee worked remotely after feeling jetlagged. Another employee was permitted to work remotely to support a friend.

6

**Plaintiff's Miscarriage Scare**

37. On Thursday, January 25, 2018, Plaintiff began to experience heavy bleeding and was rushed to the emergency room, where she was kept for over six hours.

38. While at the hospital, Plaintiff was devastated to learn that there was an exceedingly high likelihood that she would suffer a miscarriage – and, as she later informed Avon – her pregnancy was considered "high-risk."

39. Plaintiff's doctor recommended that she remain on bedrest for the following week.

40. Because Plaintiff had just started work at Avon, understandably, she was reluctant to take time off as recommended by her doctor. Instead, she requested permission for paid time off ("PTO") for the next day, Friday, January 26 (while she remained in the hospital for testing) as well as to work from home from January 29-31, 2018.

41. Nath granted this request and Plaintiff was able to complete her work in a timely manner from home.

42. Plaintiff returned to the office on Thursday, February 1, 2018, although she continued to experience pain and bleeding related to her pregnancy and felt that she could barely walk. Her doctor emphasized how important it was that she not travel and suggested she remain on bedrest through February 9, 2018.

43. Plaintiff immediately informed Avon's Human Resources ("HR") of her pregnancy and medical issues.

44. HR instructed Plaintiff to provide a doctor's note explaining that she needed to work remotely.

7

45. On Thursday, February 1, 2018, Plaintiff forwarded a note from her doctor explaining that she should work remotely for the week of February 5 to February 9, 2018.

46. Avon had the ability to accommodate Plaintiff's request with little to no effort.

### Sham Performance Issues

47. On Friday, February 2, 2018, *only one day after Plaintiff informed Avon of her pregnancy,* Plaintiff was bombarded with fabricated "performance issues" at what was supposed to be her one-on-one with her supervisor, Nath.

48. Rather than the one-on-one scheduled meeting to discuss work, Plaintiff was confronted in Nath's office by Nath, as well as a female representative from HR.

49. At this meeting, Plaintiff was told that she was having "performance issues." This was the first time that Plaintiff heard about performance issues. Notably, she had worked at Avon for less than one month in an executive position that was vacant for months before she started.

50. Nath and the HR representative explained that based on the purported performance issues that they would "**review in one week how you do**."

51. Plaintiff asked for an explanation of the alleged performance issues and help about trying to correct them.

52. Avon's sudden fault finding seemed particularly disingenuous given that she had recently received excellent feedback on her presentation to Avon, where she made proposals that would lead Avon to save upwards of $2,000,000.

53. Plaintiff did not receive any response or guidance throughout the meeting as to what her "performance issues" actually were.

54. At the end of the sham meeting, Plaintiff told Nath and the HR representative that she was pregnant and was extremely concerned that she may have a miscarriage this week.

55. Nath responded, "**your health isn't my concern, but your performance is.**"

56. Only hours after her meeting, Plaintiff was shocked to receive an email stating that her request to work remotely was denied.

57. Plaintiff received a letter from Carrie Shaner, an occupational health nurse for AVON, which included multiple inaccurate statements and ultimately rejected Plaintiff's request to work remotely for five days.

58. Specifically, Ms. Shaner accused Plaintiff of being absent from work from January 26-31, 2018. However, January 26 she was in the hospital and she had been approved for PTO, January 27-28, 2018 were non-business days, and on January 29-31, 2018, Plaintiff had successfully worked remotely with permission from Nath.

59. Ms. Shaner also characterized Plaintiff's request as "unpredictable" and "indefinite." However, Plaintiff had clearly only requested she be permitted to work remotely from February 5-9, 2018.

60. Upon receiving this letter, Plaintiff immediately responded, clarifying Ms. Shaner's mistakes and reiterating her doctor's advice to avoid traveling to work for her health.

61. Ms. Shaner did not respond.

62. Plaintiff sent a follow-up email reiterating that she did not understand why it would be a hardship for Avon to permit her to work from home given that many employees work from home, and relaying that she was "surprised that Avon would not consider a high risk pregnancy as a basis to permit you to be at home for 5 business days."

63. Plaintiff never received a response to her email.

64. Determined to do an excellent job and despite being on bedrest, Plaintiff spent the entire weekend preparing a presentation and multiple excel spreadsheets that she expected to deliver the following week.

## Avon Fires Plaintiff Because of Her Pregnancy

65. On Monday, February 5, 2018, Plaintiff was supposed to be on bedrest at the instruction of her doctor, but she put her health and her pregnancy at risk and commuted to Avon's office in Manhattan.

66. At 12:00 p.m., unexpectedly, Plaintiff was called into a meeting with Jacklyn Marcus, Vice President of Supply Chain, who Plaintiff had not spoken with since Plaintiff initially interviewed for the position, as well as with HR representative, Shawn Bay.

67. Ms. Marcus informed Plaintiff that she was being terminated effective immediately due to "performance deficiencies."[8]

68. Plaintiff responded that she believed she was being fired because she was pregnant, particularly given that she had worked at Avon for *less than four weeks*, and had not been given a fair chance to perform.

69. Horrifically, Ms. Marcus fired Plaintiff on the spot. The temporal proximity between Plaintiff's hospital stay, request for a day off and to work from home, coupled with her disclosure of her high-risk pregnancy undeniably create an inference of discrimination. Further, before the meeting in which Plaintiff and Avon executives discussed her need for time off and pregnancy, no one at Avon had even mentioned alleged performance issues.

---

[8] The performance deficiencies cited by Ms. Marcus as the cause for Plaintiff's termination, which included a falsely-attributed statement about a coworker being "shitty," purportedly failing to respond to a client's email and supposedly reaching out to an Avon employee she was instructed not to contact, are pretextual. Plaintiff did, in fact, respond to this client's email and had a meeting with the client shortly thereafter. Not only are these allegations completely contrived, but Avon failed to provide Plaintiff any opportunity respond to or otherwise cure these accusations.

70. Because of her executive level and senior responsibilities, it is inconceivable that Avon would expect a full transition to a role such as the one occupied by Plaintiff in less than four weeks. Indeed, Avon spent months recruiting for the position and it was vacant for months before she started.

71. Disingenuously and for self-serving reasons, Ms. Marcus felt obligated to tell Plaintiff that Avon is "**a company for women and [we] do a lot of arrangements for pregnant women**."

72. Nath and other executives at Avon were aware that Plaintiff was supposed to be on bedrest and avoid travel because it would increase the likelihood of a miscarriage.

73. Avon intentionally and recklessly placed Plaintiff's health and pregnancy in jeopardy by compelling her to travel to the Manhattan office on February 5, 2018 *just to be terminated*.

74. By intentionally causing Plaintiff such harm, and knowing the difficulty she would have, and in fact has experienced, in obtaining a new job while pregnant, Avon acted in direct conflict with its purported values and mission. Specifically, Avon represents that it inspires the financial independence, health and wellbeing of women:

> **STANDING FOR MORE THAN JUST BEAUTY**
> "This is the company that puts mascara on lashes and food on tables. That fights wrinkles with one hand and breast cancer with the other. That knows the value of a perfect lip, but still opens its mouth and speaks out against domestic violence and for women's financial independence. This is the company that not only brings beauty to doors, but also opens them.
> **This is Avon. The company that for over a century has stood for beauty, innovation, optimism and, above all, for women**."[9]

---

[9] https://about.avon.com/us-about/company/about.

11

## FIRST CAUSE OF ACTION
### (Discrimination in Violation of Title VII, 42 U.S.C. §§ 2000e *et seq*. ("Title VII"), as amended by the Pregnancy Discrimination Act ("the PDA"))
*Against Defendant Avon*

75. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

76. By the actions described above, among others, Defendant discriminated against Plaintiff on the basis of her gender and/or pregnancy in violation of Title VII by denying Plaintiff the same terms and conditions of employment available to others based on her gender and/or pregnancy, including but not limiting to, the termination of her employment.

77. Defendant refused to accommodate Plaintiff's pregnancy by denying her request to work remotely, fabricated performance issues and terminated her employment on the basis of her becoming pregnant.

78. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

## SECOND CAUSE OF ACTION
### (Retaliation in Violation of Title VII)
*Against Defendant Avon*

79. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

80. By the actions described above, among others, Defendant retaliated against Plaintiff in violation of Title VII by, *inter alia*, terminating her employment in retaliation for her protected activity.

81. As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages, to the greatest extent permitted under law.

### THIRD CAUSE OF ACTION
**(Discrimination in Violation of the Americans With Disabilities Act of 1990, 42 U.S.C. §§ 12101, *et seq.,* as amended by the ADA Amendments Act (the "ADA"))**
*Against Defendant Avon*

82. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

83. By the actions described above, among others, Defendant discriminated against Plaintiff on the basis of her gender and/or pregnancy in violation of the ADA by denying Plaintiff the same terms and conditions of employment available to others based on her disability and/or perceived, including but not limiting to, the termination of her employment.

84. Defendant refused to accommodate Plaintiff's pregnancy by denying her request to work remotely, fabricated performance issues and terminated her employment on the basis of her disability and/or perceived disability.

85. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of ADA, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

### FOURTH CAUSE OF ACTION
**(Retaliation in Violation of the ADA)**
*Against Defendant Avon*

86. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

87. By the actions described above, among others, Defendant retaliated against Plaintiff in violation of the ADA by, *inter alia*, terminating her employment in retaliation for her protected activity.

88. As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of the ADA, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages, to the greatest extent permitted under law.

### FIFTH CAUSE OF ACTION
### (Discrimination in Violation of the New York State Human Rights Law, N.Y. Executive Law §§ 290, et seq. ("NYSHRL"))
*Against All Defendants*

89. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

90. By the actions described above, among others, Defendants discriminated against Plaintiff on the basis of her gender and/or pregnancy and/or disability and/or perceived disability in violation of the NYSHRL by denying Plaintiff the same terms and conditions of employment available to others based on her gender and/or pregnancy and/or disability and/or perceived disability, including, but not limited to, the termination of her employment.

91. As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages, to the greatest extent permitted under law.

### SIXTH CAUSE OF ACTION
### (Retaliation in Violation of NYSHRL)
*Against all Defendants*

92. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

93. By the actions described above, among others, Defendants have retaliated against Plaintiff by, *inter alia*, terminating her employment in retaliation for her protected activity.

94. As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages, to the greatest extent permitted by law, in addition to reasonable attorneys' fees and costs.

**SEVENTH CAUSE OF ACTION**
**(Aiding and Abetting Violations of the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101, et seq. ("NYCHRL"))**
*Against Defendant Raj Nath*

95. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

96. Defendant Nath knowingly or recklessly aided and abetted the unlawful discriminatory and retaliatory conduct to which Plaintiff was subjected in violation of the NYCHRL.

97. As a direct and proximate result of Defendant Nath's unlawful aiding and abetting in violation of the NYCHRL, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages, to the greatest extent permitted under law.

**EIGHTH CAUSE OF ACTION**
**(Discrimination in Violation of the NYCHRL)**
*Against all Defendants*

98. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

99. By the actions described above, among others, Defendants discriminated against Plaintiff on the basis of her gender and/or pregnancy and/or disability and/or perceived disability in violation of the NYCHRL by denying Plaintiff the same terms and conditions of employment

available to others based on her gender and/or pregnancy and/or disability and/or perceived disability, including, but not limited to, the termination of her employment.

100. As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and costs.

101. Defendants' unlawful and discriminatory actions constitute knowing, malicious, willful, wanton and reckless violations of the NYCHRL for which Plaintiff is entitled to an award of punitive damages.

### NINTH CAUSE OF ACTION
### (Retaliation in Violation of NYCHRL)
### *Against all Defendants*

102. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

103. By the actions described above, among others, Defendants have retaliated against Plaintiff by, *inter alia*, terminating her employment in retaliation for her protected activity.

104. As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages, to the greatest extent permitted by law, in addition to reasonable attorneys' fees and costs.

105. Defendants' unlawful and discriminatory actions constitute knowing, malicious, willful, wanton and reckless violations of the NYCHRL for which Plaintiff is entitled to an award of punitive damages.

## TENTH CAUSE OF ACTION
### (Aiding and Abetting Violations of the NYCHRL)
*Against Defendant Raj Nath*

106. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

107. Defendant Nath knowingly or recklessly aided and abetted the unlawful discrimination and retaliation to which Plaintiff was subjected in violation of the NYCHRL.

108. As a direct and proximate result of Defendant Nath's unlawful aiding and abetting in violation of NYCHRL, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and costs.

109. Defendant Nath's unlawful aiding and abetting constitutes malicious, willful, wanton and reckless violations of the NYCHRL for which Plaintiff is entitled to an award of punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court enter judgment in her favor and against Defendants, containing the following relief:

A. A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States, the State of New York and the City of New York;

B. An injunction and order permanently restraining Defendants and its partners, officers, owners, agents, successors, employees and/or representatives, and any and all persons acting in concert with them, from engaging in any such further unlawful conduct, including the policies and practices complained of herein;

C. An award of damages against Defendants, or any jointly or severally liable entity or person, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including, but not limited to, loss of past and future income, wages, compensation, seniority, and other benefits of employment;

D. An award of damages against Defendants, or any jointly or severally liable entity or person, in an amount to be determined at trial, plus prejudgment interest, to compensate

Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for her emotional distress;

E.   An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff, including, but not limited to, loss of income, earned bonus pay, reputational harm and harm to professional reputation, in an amount to be determined at trial, plus prejudgment interest;

F.   An award of punitive damages, and any applicable penalties in an amount to be determined at trial;

G.   Prejudgment interest on all amounts due;

H.   An award of costs that Plaintiff has incurred in this action, including, but not limited to, expert witness fees, as well Plaintiff's reasonable attorneys' fees and costs to the fullest extent permitted by law; and,

I.   Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated:  October 3, 2018
        New York, New York

Respectfully submitted,

**WIGDOR LLP**

By: _____
    Jeanne M. Christensen
    Hilary J. Orzick

85 Fifth Avenue
New York, NY 10003
Telephone:  (212) 257-6800
Facsimile:   (212) 257-6845
jchristensen@wigdorlaw.com
horzick@wigdorlaw.com

*Counsel for Plaintiff*