**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
CAROLINE RUIZ and OLIVERA KRSTANOSKA, :     Civil Case No.: 18-cv-09033
on behalf of themselves and a class of similarly     :     (VSB)(GWG)
situated individuals,     :
    :
                   Plaintiffs,     :
    :     **AMENDED CLASS ACTION**
       v.     :     **COMPLAINT**
    :
NEW AVON LLC and AVON PRODUCTS, INC.,     :
    :     **Jury Trial Demanded**
               Defendants.     :
    :
-----------------------------------------------------------------X

Plaintiffs **Caroline Ruiz** and **Olivera Krstanoska** ("Plaintiffs" or "Class Representatives"), on

behalf of themselves and all other similarly situated female employees (the "Class"), against

Defendants New Avon, LLC and Avon Products, Inc. (together, "Avon"), allege that Avon has

and continues to engage in systemic discrimination based on pregnancy, maternity and the rights

of nursing mothers to pump breast milk at work, as follows:

## SUMMARY OF CLAIMS

1.     Avon says it is "**the company for women**."

2.     Avon distinguishes itself from mainstream companies based on its "passionate

commitment" to empowering women.  Because of this branding, women spend millions on Avon

products.  Because of this branding, women apply to work at Avon, believing that the company

will empower them to succeed and provide women opportunities for advancement.

3.     Because Avon declares that its women-centric approach helps "break traditional

barriers," the last thing Avon employees expect to experience is pregnancy discrimination.

4.     No reasonable woman would expect Avon, a company that brands itself as a champion of women's causes to fire a female employee just *days* after giving notice of her pregnancy or need to take maternity leave. As detailed below, that was Plaintiff Ruiz's experience at Avon.

5.     No reasonable woman would expect Avon, a company that brands itself as a champion of women's causes to subject a female employee returning from maternity leave to disparagement, marginalization and accusations of poor performance because she stayed home with her newborn after childbirth or because she nursed her baby and needed to pump breast milk at work.  As detailed below, that was Plaintiff Krstanoska's experience at Avon.

6.     Moreover, Plaintiff Krstanoska worked alongside at least one other female employee that suffered similar discrimination in connection with her pregnancy, maternity and need to pump breast milk at work.

7.     Being a new mother should be one of the most meaningful and significant experiences in life.  It should not be a reason to fire or marginalize a female employee.  Despite layers of protective laws on the federal, state and municipal levels, some employers, including Avon, continue to take advantage of female employees during this vulnerable time surrounding childbirth.[1]  As compared to similarly situated male employees, and non-maternity status co-workers, female employees during maternity often must work harder, more efficiently and better

---

[1]     Unless otherwise noted, the terms "maternity" or "maternity status" in this Complaint refer to the period of pregnancy, and/or time immediately prior to and after childbirth, and/or the average period after childbirth that women in New York breastfeed newborns, that presently is about six months.  *See* https://www.cdc.gov/breastfeeding/data/facts.html.
The American Academy of Pediatrics (AAP) recommends that infants be exclusively breastfed for the first six months with continued breastfeeding alongside introduction of appropriate complementary foods for one year or longer.  The Centers for Disease Controls and Prevention ("CDC") lists "unsupportive work policies and lack of parental leave" as a factor influencing women's decision to breastfeed for less than six months.

– simply to deflect "traditional barriers" and bias that childbirth has caused them to lose focus, underperform or be less committed to work.

8.      There is no excuse for companies that fail to adhere to the minimum standards by law to accommodate employees that become pregnant and experience childbirth.  It seems especially cruel that Avon, a company that claims to promote a woman-centric culture, would allow such inequity to exist.

9.      While no manager or employee at *any company* should feel emboldened to marginalize pregnant employees or nursing women that need the space and the opportunity to express and store breast milk after childbirth; it is galling to know that such conduct is occurring at Avon.

10.     Incredulously, Avon believes that it has the right to ignore the laws enacted to protect the rights of women from such workplace abuses.  In addition to their individual claims, Plaintiffs assert claims against Avon on behalf of these proposed classes:

### Title VII Class
All female employees that have or will be employed at Avon in the U.S. from September 5, 2017 to the date of judgment that have been or will be pregnant, including those female employees that have been or will be pregnant and had pregnancy complications that required workplace accommodations; and those female employees that have been or will take maternity leave between September 5, 2017 to the date of judgment in violation of Title VII and PDA (the "Title VII Class").

### NYS Subclass and NYC Subclass
All female employees that have or will be employed at Avon in the state of New York (the "NYS Subclass") or in New York City (the "NYC Subclass") from November 13, 2015 to the date of judgment that have been or will be pregnant, including those female employees that have been or will be pregnant and had pregnancy complications that required workplace accommodations; and those female employees that have been or will take maternity leave between November 13, 2015 to the date of judgment.

**Breast Pumping Class**

All female employees that have or will be employed at Avon in the state of New York from November 13, 2015 to the date of judgment that have needed to or will need to pump breast milk during work hours (the "Breast Pumping Class").

## I.   Men Dominate the Predominantly Female Workforce at Avon

11.   While Avon scrambles to explain how and why it failed to protect pregnant women, employees that take pregnancy related leave or nursing mothers who need to express breast milk during work, Avon must explain **why the company "for women" actually is a company run by men.**

12.   Women should be appalled when they click on the executive leadership link at Avon's site and see a group of white men staring back.  The CEO, Jan Zijderveld, is a white male.  The CFO, Jamie Wilson, is a white male. The COO, Jonathan Myers, is a white male. The Global President, Miguel Fernandez, is a white male.  The list goes on.[2]  Appallingly, of the 18 members on the Management Committee, just five are women.[3]  For a company that bases its entire brand on female empowerment, the fact that a mere 27% of the Management Committee is female is outrageous.  The CEO of New Avon LLC, Scott White, also is a white male.[4]  The CEO of the majority stakeholder in New Avon LLC, Cerberus Operations and Advisory Company, is Chan W. Galbato, also a white male.[5]

---

[2]       http://www.avoncompany.com/aboutavon/our-people/executiveleadership/index.html.  As discussed *infra,* despite Avon's spin off of the North American market into a private limited liability company named "New Avon LLC," any online search for information about New Avon, its leadership or corporate structure, automatically is redirected to Avon's site —www.avoncompany.com.

[3]       http://www.avoncompany.com/aboutavon/our-people/management-committee/index.html.  Equally horrific, just one member appears to be a person of color.

[4]       https://about.avon.com/company/board-of-managers/scott-white-bom.

[5]       https://about.avon.com/company/board-of-managers/chan-w-galbato.

13.     The message is clear: only men, not women, are fit to lead Avon.     Despite boasting that more than 60% of employees at Avon are female, the reality is that a handful of men dominate the predominantly female workforce.

14.     Workplace policies about maternity status and the procedures to implement such policies come from the top.   A disproportionately male dominated leadership team at Avon matters because male executives making maternity policy decisions suggests a greater likelihood that Avon uses the male experience of work as the default standard.   As detailed below, Plaintiffs' experiences show that Avon expected them to conform to a male work experience. When Plaintiff Krstanoska, a young, first-time mother, dared to complain repeatedly about discrimination at the hands of her older, white male supervisor, she was forced to defend herself to two more, older, white male managers.   Not surprisingly, these three older white men considered her complaints of maternity discrimination unfounded.

15.     Such men, and the leadership team, are responsible for imposing the standards for workplace policies and guidelines at Avon, including protocols to comply with federal, state and city laws enacted to protect female employees from experiencing the unlawful pregnancy related treatment described in this complaint.[6]

---

[6]     The harm inflicted on female workers fired while pregnant is substantial.  Essentially sidelined from future employment for the rest of their pregnancy through childbirth, fired pregnant women lose medical coverage, often are forced to find new physicians in the middle of a pregnancy, and lose valuable safety nets from federal and state laws such as FMLA.  In a recent New York Time's article, *Pregnancy Discrimination is Rampant Inside America's Biggest Companies*, reporters Natalie Kitroeff and Jessica Silver-Greenberg detail the tangible career sidelining that pregnant employees experience, as well as the abhorrent bias that labels pregnant employees as unmotivated, less committed, less dependable and irrational. *See* https://www.nytimes.com/interactive/2018/06/15/business/pregnancy-discrimination.html.

16.     Avon leadership allowed what should be neutral, uniform policies surrounding maternity status issues, to be implemented in a subjective, non-uniform, unreliable way that disadvantaged the very employees the laws were created to protect.

17.     Importantly, these same male leaders are responsible for perpetuating discrimination at Avon by forcing women that dare complain into mandatory arbitration. Female employees are victimized a second time when they must forego their constitutional and fundamental right to pursue legal claims in court.

## II.     Avon is Not a Company "For Women" Because It Uses Forced Arbitration as a Term of Employment

18.     Avon is not a company **"*for women*"** because it attempts to force female employees out of public courts and into the silent halls of mandatory arbitration. Forced arbitration as a term of employment means that Avon employees that experience gender discrimination, pregnancy discrimination, sexual harassment or discrimination because of a need to pump breast milk during work, must hide their legal claims from the public.

19.     Secret arbitration is the opposite of transparency. Forced arbitration does not "empower women" nor does it "support women's causes." It does the opposite.

20.     Shamefully, Avon continues to reap the benefits of its "*for women*" marketing, when corporate executives are intentionally attempting to silence stories like the stories set forth in this complaint and those of proposed class members through mandatory arbitration agreements.

21.     At a minimum, Avon has systematically attempted to force individual arbitration on employees since April 29, 2016 for all types of discrimination, including but not limited to:

**Gender, sex, pregnancy, sexual harassment, age, religion, race, sexual orientation, marital status, physical or mental disability or medical condition**.

22.     Upon information and belief, Avon also attempted to force arbitration silence on female employees prior to April 29, 2016.

23.     Although the male leadership at Avon knows that forced arbitration is contrary to empowering female victims of discrimination, Avon disgracefully has opted to continue its policies– even in the wake of the #MeToo movement and the public's realization that forcing women into arbitration is both tremendously harmful and contrary to all notions of justice.

24.     While numerous companies, including Microsoft and Google are voluntarily doing away with arbitration agreements, Avon continues to deny female employees a basic and constitutional right to a jury of their peers in court.

25.     Along with Avon's purported claim of:

**"a woman-centric approach on projects to break traditional barriers and empower women to build a better future by taking control of their well-being,"[7]**
comes a moral obligation to lead by example and be at the forefront of social justice movements.

26.     If Avon continues to hide from public accountability and transparency, it cannot hold itself out to investors, prospective employees, current employees, and customers as a "champion of women's causes."

## JURISDICTION AND VENUE

27.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding the deprivation of Plaintiffs' rights under Title VII.  The Court has supplemental jurisdiction over Plaintiffs' related claims arising under State and local law pursuant to 28 U.S.C. § 1367(a).

---

[7]     *See* http://www.avoncompany.com/corporate-responsibility/womens-causes/

28.     Pursuant to 28 U.S.C. § 1391(b), venue is proper in this Court because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## PARTIES

29.     Plaintiff Caroline Ruiz is a former employee of Avon who, at all relevant times, worked at Avon's One Liberty Plaza, New York, New York 10006 location.  Plaintiff is a resident of the State of New York and at all relevant times herein met the definition of an "employee" under all relevant statutes throughout her employment with Defendants.

30.     Plaintiff Olivera Krstanoska is a former employee of Avon who, at all relevant times, worked at Avon's offices in Suffern, New York.  Plaintiff is a resident of the State of New Jersey and, at all relevant times herein, met the definition of an "employee" under all relevant statutes throughout her employment with Defendants.

31.     Founded in 1886, Defendant Avon Products, Inc. (the "Company" or "Avon") operates in approximately 70 countries and is a publically traded company on the NYSE under the symbol "AVP."  Avon is incorporated in the state of New York, with its principal executive office located in Rye, New York.[8]  In March 2016, Avon spun its North American business, including Canada, into a privately held limited liability company controlled by Cerberus Capital Management, L.P. ("Cerberus").  Cerberus is a private equity firm that specializes in distressed investing; it operates from New York, New York.

32.     Avon named the new privately held limited liability company "New Avon." Avon continues to own a minority share in New Avon and continues to actively operate and participate in the Company's North American business.

---

[8]     According to the NYS Division of Corporations, Avon's chief executive officer works from the company location in the U.K. *See* https://www.dos.ny.gov/corps/bus_entity_search.html.

33.     Defendant New Avon, LLC (collectively with Avon Products, Inc., "Avon") is a New York foreign limited liability company and is headquartered at One Liberty Plaza, New York, New York 10006.  Avon is the leading social selling beauty company in North America, with independent sales representatives throughout the United States, Puerto Rico and Canada. Avon's products include skincare, color cosmetics, fragrance and personal care products, and brands such as ANEW, Avon Color, mark., and Skin So Soft, as well as fashion and accessories.

34.     Despite the recent sale to Cerberus and creation of New Avon, LLC, the Company continues to brand itself collectively as "Avon" in connection with its North American business.  For example, online inquiries about New Avon LLC automatically are directed to the site www.avon.com.   In a recent press release about Avon's plan to consolidate U.S. operations to Avon's offices in Suffern, New York in 2019, the press release was issued from the Company's headquarters in London and Avon CEO Jan Zijderveld stated:

> "With Avon's international focus, simplifying our U.S. operations is a logical next step in providing fuel for growth, and a further example of our commitment to improve Avon's performance and become more fit for purpose."[9]

35.     At all times relevant herein, Avon was and is an "employer" under all relevant statutes.

### ADMINISTRATIVE PREREQUISITES

36.     On July 2, 2018, Plaintiff Ruiz filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

37.     On August 3, 2018, Plaintiff Ruiz received a Notice of Right to Sue from the EEOC.  Fewer than 90 days have passed since Plaintiff Ruiz filed her Notice of Right to Sue.

---

[9]      *See* https://www.prnewswire.com/news-releases/avon-products-inc-to-create-leaner-new-york-operations-300715628.html.

38.     Following commencement of this action, a copy of this Complaint will be served upon both the New York City Commission on Human Rights and the New York City Law Department, Office of the Corporation Counsel, thereby satisfying the notice requirements of the New York City Administrative Code.

39.     Any and all other prerequisites to the filing of this suit have been met.

### FACTUAL ALLEGATIONS

I.     **Plaintiff Ruiz**

40.     Plaintiff Ruiz is an experienced procurement leader with an extensive background in Direct, Indirect and Capex procurement.

41.     Plaintiff holds three Masters degrees, including a degree in International Strategic Sourcing from the Bordeaux Business School in France as well as degrees in Chemistry and Engineering in Materials Technology from the Institut de Sciences et Technologie - Université Pierre et Marie Curie, France.

42.     For approximately six years, Plaintiff worked for Estee Lauder, starting as the Global Indirect Procurement Manager and working her way up to the Global Packaging and Indirect Procurement Lead.

43.     After Estee Lauder and prior to joining Avon, Plaintiff served as the Executive Director of Shiseido for approximately two years, where she was the Head of Indirect Procurement for the entire Americas region.

44.     Plaintiff was recruited aggressively by Avon to join the company as the Global Head of North America Indirect Procurement.  She began work at Avon in early January 2018.

45.     During her first three weeks of employment, Plaintiff quickly learned that Avon employees routinely worked from home or away from the office.

46.     For example, Plaintiff's supervisor, Nath, often worked remotely.

47.     One of Plaintiff's direct reports, a male employee, worked remotely on a permanent basis, and Plaintiff only communicated with him through video conferences, phone and email.[10]

48.     Another one of Plaintiff's direct reports was permitted to work remotely for four weeks after the death of a family member.

49.     Working remotely was so widespread that one day, Plaintiff was the only member of her department to be physically in the office.

50.     As Plaintiff understood, her fellow Avon employees were not required to meet any formal in office work requirements.[11]

51.     Less than one week after Plaintiff began her employment, Nath instructed her to terminate long-term employee, Rosemary Gunther, who was only a few months from her anticipated retirement.

52.     Ms. Gunther, a purchasing agent for more than 20 years at Avon, was 66 at the time Avon wanted Plaintiff to terminate her.

53.     Plaintiff told Nath that it was not "right" to fire Ms. Gunther because she had no performance issues, and she was a long-time employee in good standing who was about to retire. Upset with Plaintiff, Nath fired Ms. Gunther himself.[12]

---

[10]     Nath told Plaintiff that she had to "coddle" younger employees, including this direct report, and give them "love and care" so that they are happy.  Upon information and belief, Nath never requested that a male employee provide "love" to a direct report.

[11]     For example, one employee worked remotely after feeling jetlagged.  Another employee was permitted to work remotely to support a friend.

[12]     Disturbingly, this request may not be an isolated event at Avon.  A number of publically filed complaints against Avon reveal allegations of a similar fact pattern involving the terminations of long-term female employees in their late 50s and early 60s who are close to achieving retirement status and eligible for a full pension.  By way of example only, in *Yonkovig v. Avon Products Inc.*, 18-cv-00560 (E.D. Va. 2018) (plaintiff alleged that just 2 months prior to her eligibility for a full pension at age 55, and after working at Avon for over 20 years, she was terminated over "undefined performance issues").  *See also Riley-Moore v. New Avon, LLC*, 17-cv-05370 (E.D. Pa. 2017) (plaintiff alleged that she was terminated for "performance issues" after she took FMLA leave despite having

A.   **Plaintiff's Miscarriage Scare**

54.   On Thursday, January 25, 2018, Plaintiff began to experience heavy bleeding and was rushed to the emergency room, where she was kept for over six hours.

55.   While at the hospital, Plaintiff was devastated to learn that there was an exceedingly high likelihood that she would suffer a miscarriage — and, as she later informed Avon — her pregnancy was considered "high-risk."

56.   Plaintiff's doctor recommended that she remain on bedrest for the following week.

57.   Because Plaintiff had just started work at Avon, understandably, she was reluctant to take time off as recommended by her doctor.  Instead, she requested permission for paid time off ("PTO") for the next day, Friday, January 26 (while she remained in the hospital for testing) as well as to work from home from January 29-31, 2018.

58.   Nath granted this request and Plaintiff was able to complete her work in a timely manner from home.

59.   Plaintiff returned to the office on Thursday, February 1, 2018, although she continued to experience pain and bleeding related to her pregnancy and felt that she could barely walk.  Her doctor emphasized how important it was that she not travel and suggested she remain on bedrest through February 9, 2018.

60.   Plaintiff immediately informed Avon's Human Resources ("HR") of her pregnancy and medical issues.

---

recently received two performance-based awards); *Vazquez-Rivera v. Avon Products, Inc.* 14-cv-01251 (D.P.R. 2014) (plaintiff, a 50 year old female, alleged that she was terminated for "unsatisfactory performance" after working for Avon for 27 years and having received several performance-based awards just months prior); *Rossello v. Avon Products, Inc.*, 14-cv-01908 (D.P.R. 2014) (plaintiff, a 63 year old female, alleged that she was disciplined despite high performance after working for Avon for over 20 years).

61.     HR instructed Plaintiff to provide a doctor's note explaining that she needed to work remotely.

62.     On Thursday, February 1, 2018, Plaintiff forwarded a note from her doctor explaining that she should work remotely for the week of February 5 to February 9, 2018.

63.     Avon had the ability to accommodate Plaintiff's request with little to no effort.

**B.     Sham Performance Issues**

64.     On Friday, February 2, 2018, ***only one day after Plaintiff informed Avon of her pregnancy,*** Plaintiff was bombarded with fabricated "performance issues" at what was supposed to be her one-on-one with her supervisor, Nath.

65.     Rather than the one-on-one scheduled meeting to discuss work, Plaintiff was confronted in Nath's office by Nath, as well as a female representative from HR.

66.     At this meeting, Plaintiff was told that she was having "performance issues." This was the first time that Plaintiff heard about performance issues.  Notably, she had worked at Avon for less than one month in an executive position that was vacant for months before she started.

67.     Nath and the HR representative explained that based on the purported performance issues that they would "**review in one week how you do**."

68.     Plaintiff asked for an explanation of the alleged performance issues and help about trying to correct them.

69.     Avon's sudden fault finding seemed particularly disingenuous given that she had recently received excellent feedback on her presentation to Avon, where she made proposals that would lead Avon to save upwards of $2,000,000.

70.     Plaintiff did not receive any response or guidance throughout the meeting as to what her "performance issues" actually were.

71.     At the end of the sham meeting, Plaintiff told Nath and the HR representative that she was pregnant and was extremely concerned that she may have a miscarriage this week.

72.     Nath responded, "**Your health isn't my concern, but your performance is.**"

73.     Only hours after her meeting, Plaintiff was shocked to receive an email stating that her request to work remotely was denied.

74.     Plaintiff received a letter from Carrie Shaner, an occupational health nurse for Avon, which included multiple inaccurate statements and ultimately rejected Plaintiff's request to work remotely for five days.

75.     Specifically, Ms. Shaner accused Plaintiff of being absent from work from January 26-31, 2018.   However, on January 26 she was in the hospital and she had been approved for PTO, January 27-28, 2018 were non-business days, and on January 29-31, 2018, Plaintiff had successfully worked remotely with permission from Nath.

76.     Ms. Shaner also characterized Plaintiff's request as "unpredictable" and "indefinite." However, Plaintiff had clearly only requested she be permitted to work remotely from February 5-9, 2018.

77.     Upon receiving this letter, Plaintiff immediately responded, clarifying Ms. Shaner's mistakes and reiterating her doctor's advice to avoid traveling to work for her health.

78.     Ms. Shaner did not respond.

79.     Plaintiff sent a follow-up email reiterating that she did not understand why it would be a hardship for Avon to permit her to work from home given that many employees work

14

from home and relayed that she was "surprised that Avon would not consider a high risk pregnancy as a basis to permit you to be at home for 5 business days."

80.     Plaintiff never received a response to her email.

81.     Determined to do an excellent job and despite being on bedrest, Plaintiff spent the entire weekend preparing a presentation and multiple excel spreadsheets that she expected to deliver the following week.

### C.     Avon Fires Plaintiff Because of Her Pregnancy

82.     On Monday, February 5, 2018, Plaintiff was supposed to be on bedrest at the instruction of her doctor, but she put her health and her pregnancy at risk and commuted to Avon's office in Manhattan.

83.     At 12:00 p.m., unexpectedly, Plaintiff was called into a meeting with Jacklyn Marcus, Vice President of Supply Chain, who Plaintiff had not spoken with since Plaintiff initially interviewed for the position, as well as with HR representative, Shawn Bay.

84.     Ms. Marcus informed Plaintiff that she was being terminated effective immediately due to "performance deficiencies."[13]

85.     Plaintiff responded that she believed she was being fired because she was pregnant, particularly given that she had worked at Avon for *less than four weeks*, and had not been given a fair chance to perform.

86.     Horrifically, Ms. Marcus fired Plaintiff on the spot.  The temporal proximity between Plaintiff's hospital stay, request for a day off and to work from home, coupled with her

---

[13]     The performance deficiencies cited by Ms. Marcus as the cause for Plaintiff's termination, which included a falsely-attributed statement about a coworker being "shitty," purportedly failing to respond to a client's email and supposedly reaching out to an Avon employee she was instructed not to contact, are pretextual.  Plaintiff did, in fact, respond to this client's email and had a meeting with the client shortly thereafter.  Not only are these allegations completely contrived, but Avon failed to provide Plaintiff any opportunity respond to or otherwise cure these accusations.

disclosure of her high-risk pregnancy undeniably create an inference of discrimination. Further, before the meeting in which Plaintiff and Avon executives discussed her need for time off and pregnancy, no one at Avon had even mentioned alleged performance issues.

87.    Because of her executive level and senior responsibilities, it is inconceivable that Avon would expect a full transition to a role such as the one occupied by Plaintiff in less than four weeks. Indeed, Avon spent months recruiting for the position and it was vacant for months before she started.

88.    Disingenuously and for self-serving reasons, Ms. Marcus felt obligated to tell Plaintiff that Avon is "**a company for women and [we] do a lot of arrangements for pregnant women**."

89.    Nath and other executives at Avon were aware that Plaintiff was supposed to be on bedrest and avoid travel because it would increase the likelihood of a miscarriage.

90.    Avon intentionally and recklessly placed Plaintiff's health and pregnancy in jeopardy by compelling her to travel to the Manhattan office on February 5, 2018 *just to be terminated*.

91.    By intentionally causing Plaintiff such harm, and knowing the difficulty she would have, and in fact has experienced, in obtaining a new job while pregnant, Avon acted in direct conflict with its purported values and mission. Specifically, Avon represents that it inspires the financial independence, health and wellbeing of women:

> **STANDING FOR MORE THAN JUST BEAUTY**
> "This is the company that puts mascara on lashes and food on tables. That fights wrinkles with one hand and breast cancer with the other. That knows the value of a perfect lip, but still opens its mouth and speaks out against domestic violence and for women's financial independence. This is the company that not only brings beauty to doors, but also opens them.

> **This is Avon. The company that for over a century has stood for beauty, innovation, optimism and, above all, for women**."[14]

## II.   Plaintiff Krstanoska

76.    Olivera Krstanoska is a successful microbiologist and holds a Master's degree in Biomedical Sciences and Biodefense.

77.    In January 2014, Ms. Krstanoska started working at Avon's Global Research & Development Center in Suffern, New York as a microbiologist.

78.    Approximately eight months into her employment at Avon, Ms. Krstanoska was overjoyed to learn that she was pregnant with her first child.

79.    Almost immediately after she disclosed her pregnancy, Avon allowed Ms. Krstanoska to be subjected to discriminatory hostile working conditions and an unsafe work environment.

### A.    Avon Places Ms. Krstanoska's Pregnancy at Risk

80.    As a microbiologist at Avon, Ms. Krstanoska had exposure to chemicals that posed a risk for pregnant women and that could impact detrimentally the healthy development of the fetus.

81.    Ms. Krstanoska explained to her department supervisor and other microbiologists that she should avoid particular tasks while at work so that she could avoid these chemicals.

82.    All Avon employees in Ms. Krstanoska's lab, including one of Ms. Krstanoska's senior laboratory technicians, Kathy LaPointe ("LaPointe"), were trained and aware that HC Agar was harmful to pregnant mothers.   In fact, Hazel Pierson, one of Ms. Krstanoska's

---

[14]        *See* https://about.avon.com/us-about/company/about.

coworkers, joked that Ms. Krstanoska would have a "three-legged baby" because of her exposure to HC Agar.

83.     Despite the well-known risks, LaPointe insisted that Ms. Krstanoska continue to work with potentially harmful chemicals.

84.     LaPointe raised her voice on multiple occasions, yelling at Ms. Krstanoska that she must use the chemical HC Agar, which is involved in a method Avon uses to test its cosmetics for mold.  LaPointe also yelled at Ms. Krstanoska when she wore a mask to prevent breathing air contaminated by HC Agar.

85.     Clearly, LaPointe had no regard for Ms. Krstanoska's safety or the safety of her unborn child.

86.     Ms. Krstanoska's supervisor, Donald English[15] ("English"), witnessed LaPointe's harassment and insistence that Ms. Krstanoska work with the harmful chemical.  However, English did nothing to discipline LaPointe or stop the harassment.

87.     At the workplace, LaPointe regularly belittled and demeaned Ms. Krstanoska in connection with her status as a pregnant employee, and eventually escalated her hostility to the point where she admitted an intent to cause Ms. Krstanoska to inadvertently harm her unborn child.

88.     Multiple coworkers were present and witnessed LaPointe's harassment, however no supervisor was present for LaPointe's threat.

89.     Following this threat, Ms. Krstanoska, extremely upset, went to English.

---

[15]     English is a male in his mid-sixties.

90.     English told Ms. Krstanoska simply to "ignore" LaPointe, and that LaPointe likely was acting this way because she was "off her meds."  Such "advice," unprofessional and non-productive, was negligent and failed to remedy the situation.

91.     Because of Avon's failure to discipline LaPointe, LaPointe continued to harass Ms. Krstanoska and admonish Ms. Krstanoska for her refusal to work with certain chemicals based on her pregnancy status.

92.     Ms. Krstanoska did her best to ignore LaPointe, but because of Avon's failure to intervene, she was forced to make complaints to English about the harassment on a regular basis.

93.     It is Ms. Krstanoska's understanding that English failed to investigate her complaints or escalate them to Avon's Human Resources ("HR") at this time.

**B.     Harassment Continues After Ms. Krstanoska Returns from Leave**

94.     Ms. Krstanoska was concerned that Avon would subject her to discriminatory treatment when she returned after maternity leave in October 2015.

95.     Sadly, her concerns were justified. By way of example only, when Ms. Krstanoska returned, she learned that her workstation and her lab equipment had been moved and she no longer had her own station.  This situation placed her at a disadvantage as compared to her peers and negatively impacted her performance.

96.     Because Ms. Krstanoska's workstation was taken away, she suddenly found herself without her own lab equipment.

97.     As a result, Ms. Krstanoska had to wait for another microbiologist to finish using their equipment, and then borrow his or her equipment as soon as he or she was finished with it.

98.     Ms. Krstanoska was the only microbiologist who was not provided his or her own equipment and for obvious reasons. The decision to deny her this was adverse to her responsibilities and ability to perform her work to the best of her ability.

99.     Ms. Krstanoska's workbenches were also removed while she was on maternity leave.

100.    Ms. Krstanoska made multiple requests to her supervisor to replace at least one of her workbenches so that she could sit and stand while doing her work.  However, no workbench was ever provided, leaving Ms. Krstanoska to sit throughout the entire workday day.  All other employees in her lab had benches.

101.    Ms. Krstanoska became the subject of a rumor at Avon that she was suffering from post-partum depression.  This was false.

102.    Ms. Krstanoska was forced to report the issues of the denial of her own work station and equipment to English.

103.    When English failed to respond, Ms. Krstanoska reported these issues directly to Avon's HR.

104.    HR directed Ms. Krstanoska to Justin O'Neal ("O'Neal"), an HR employee.

105.    English and O'Neal failed to investigate or remedy these workplace problems designed to adversely impact her performance.

C.     **Avon Places Ms. Krstanoska's Health and Safety at Risk after She Discloses Her Second Pregnancy**

106.    In November of 2015, Ms. Krstanoska became pregnant with her second child. While delighted of the news that her family would be growing, she was terrified of the treatment she would be subjected to at Avon after she disclosed her pregnancy.

107.    That same month, Ms. Krstanoska disclosed her pregnancy.  At the same time, she also requested to be removed from tasks that required the chemical HC Agar.

108.    English told Ms. Krstanoska that requesting this accommodation would not be a problem and would not impact her employment at Avon.

109.    What English failed to tell her is that she would be penalized for simply making the request for this accommodation during her pregnancy.

110.    At Ms. Krstanoska's 2015 end of the year review, English told her that she "failed" to "step up" as a microbiologist by requesting to be removed from tasks that required exposure to HC Agar.[16]

111.    English was forcing Ms. Krstanoska to make a choice between her job and putting her pregnancy at risk.

112.    Ms. Krstanoska immediately complained to O'Neal about English's review, stating that it was discriminatory and retaliatory.  She requested an in person meeting with O'Neal.

113.    In December 2015, Ms. Krstanoska met with Avon's Senior Vice President of Product Safety and Regulatory Affairs, Steve Gettings ("Gettings").  Gettings is also a male, approximately 60 years old.

114.    Gettings failed to investigate Ms. Krstanoska's complaints or remedy her situation.

115.    At Ms. Krstanoska's end of the year review, Ms. Krstanoska requested that O'Neal or Gettings be present given English's discriminatory behavior.  Ms. Krstanoska was told

---

[16]    Her previous performance reviews were excellent.

by O'Neal "that would not be necessary," and instead scheduled Ms. Krstanoska's end of the year review with English and bizarrely, one of Ms. Krstanoska's fellow microbiologists.

116.    At the end of the year review, English proceeded to make false accusations and question Ms. Krstanoska's performance.  Ms. Krstanoska disputed his characterization of what happened and tried to plead her situation.  Ms. Krstanoska was ignored, dismissed, and marginalized.

117.    Ms. Krstanoska complained to Gettings and O'Neal about the unfair review, but they failed to engage in any type of investigation or action to remedy the situation.

118.    Instead her greatest fears materialized because after the meeting, English felt emboldened to retaliate against Ms. Krstanoska even more blatantly, creating an even more hostile and toxic work environment.

119.    By way of example, English began leaving Ms. Krstanoska off of important calls and meetings that she previously had been included in.

120.    English also excluded Ms. Krstanoska from team meetings, causing her to miss important company developments and policy updates.

121.    English also scrutinized the hours Ms. Krstanoska worked more so than her coworkers.  After making her complaint and going out on maternity leave, English required Ms. Krstanoska to work from approximately 9 a.m. to 5 p.m., and would pressure her to work even later than 5 p.m.

122.    English did not require any other microbiologist to arrive to work earlier than 10 a.m. or work past 4 p.m.

123.    Ms. Krstanoska also continued to be harassed by her coworkers with English's knowledge.

124.    For instance, one day LaPointe purposefully unplugged the equipment that Ms. Krstanoska was using, that caused Ms. Krstanoska to lose an entire days' worth of work.

125.    On another occasion, LaPointe doused Ms. Krstanoska's coat in perfume when Ms. Krstanoska stepped away from her desk while knowing that the strong scent would make her ill.

126.    On an almost weekly basis, Ms. Krstanoska continued to complain to HR about her discriminatory treatment and English's failure to remedy the situation.

**D.      Similarly Situated Pregnant Employee is Discriminated**

127.    At the time, Ms. Krstanoska knew about at least one other pregnant employee that worked as a microbiology lab technician, who had faced similar harassment at Avon because of her status as pregnant, maternity leave and return to Avon after childbirth.  Ms. Krstanoska knew that this co-worker often hid in the lab to avoid interacting with English.

128.    Ms. Krstanoska understood that this fellow employee was afraid to speak out against English for fear of suffering retaliation.

129.    Upon information and belief, unable to tolerate English's conduct, this female employee was constructively discharged at Avon.

**E.      Avon Discriminates Against  Mothers That Pump Breast Milk**

130.    When Ms. Krstanoska returned after her first maternity leave, she was breast-feeding.  Accordingly, she needed to pump breast milk during the workday.

131.    Unfortunately, Avon made it unbearable.   Avon also violated protections guaranteed to nursing mothers under department of labor regulations, including NYLL, Section 206-c.

132.   NYS Department of Labor regulations, nursing mothers are entitled to breaks of at least 20 minutes or more, once every three hours, for up to three years after the birth of a child. Contrary to this law, Ms. Krstanoska was made to feel marginalized and penalized for taking short periods to pump breast milk.  English and co-workers acted as if she was opting to avoid her work responsibilities and performance expectations simply because she pumped breast milk.

133.   Worse, multiple employees openly mocked Ms. Krstanoska for choosing to pump and Avon management did nothing to stop it.

134.   By way of example only, one employee would cruelly ask Ms. Krstanoska whether she pumped so she could have "milk for her cereal."

135.   Horrifically, Avon failed to provide Ms. Krstanoska a private, safe place to refrigerate her breastmilk and told her if she needed a refrigerator, she must store her breast milk in the refrigerator in the lab.  Ms. Krstanoska was in constant fear that her coworkers would contaminate her breast milk, just as they sabotaged her lab results, and expose the milk to harmful chemicals in Avon's lab without her knowledge.

136.   As a result of the constant torment and negative feedback about taking time during the workday to pump, Ms. Krstanoska decided to stop breastfeeding her child months earlier than she otherwise would have stopped.

**F.**   **Threatened Assault and Adverse Employment Action**

137.   English's harassment continued to escalate, until it came to a head on April 22, 2016.

138.   On April 22, 2016, Ms. Krstanoska was alone in the lab's small waste room working when English, who is 6'5 and significantly larger than Ms. Krstanoska, came very close to her and started yelling about her efforts to document her hostile work environment.  English

leaned in and physically was very close to her while yelling.  Ms. Krstanoska was terrified that he was about to hit her or harm her in some way.

139.    Ms. Krstanoska, who was sixth months pregnant, became extremely distressed and scared for her safety.

140.    In terror, Ms. Krstanoska ran from the lab to speak with O'Neal.

141.    Ms. Krstanoska described the threatening conduct from English, and begged O'Neal to not make her work with English any longer.

142.    O'Neal then sent Ms. Krstanoska, unaccompanied, to the Lab's library to wait in fear for further instruction. After leaving Avon that day, she was so concerned about the safety of her unborn child, she drove straight to her doctor's office to have an ultrasound performed in order to make sure everything was normal.

143.    Despite her extreme distress, rather than discipline English, O'Neal transferred Ms. Krstanoska to a position in a new department, as an associate toxicology, which O'Neal knew was an adverse employment action.

144.    First, Ms. Krstanoska had no experience in toxicology and was unqualified for the position.  Second, Ms. Krstanoska was assigned the workload of three previous employees. Third, the employee that Ms. Krstanoska was replacing in that position held a doctorate in toxicology, not a master's in biomedical science and biodefense like Ms. Krstanoska.  In her first few days in toxicology, Ms. Krstanoska's new coworkers joked about that how underqualified and inexperienced she was for the position.  Everyone at Avon knew that her master's degree was not enough.

145.    Ms. Krstanoska was transferred her to a job that she could not do, and she recognized that Avon set her up for failure.

146.    In addition to effectively ending Ms. Krstanoska's employment progress at Avon, the adverse transfer did not alleviate Ms. Krstanoska's safety concerns and issues with English.

147.    English continued to work in the same building as Ms. Krstanoska.   They attended the same meetings and would sometimes be in the elevator together.

148.    Ms. Krstanoska, at six months pregnant, would opt to walk up flights of stairs to avoid being in the same elevator as English.

149.    Ms. Krstanoska continued to complain to HR, but knew that her complaints had fallen on deaf ears and that Avon simply wanted her to quit rather than face the optics termination.

150.     Approximately two weeks after English threatened her, and in a new position with no future, Ms. Krstanoska was constructively discharged.

## CLASS ALLEGATIONS

**I.     Discriminatory Employment Practices Against Maternity Status Employees**

151.    At Avon, employees are subject to a corporate culture that operates based on a predominately-male executive team.   As recently as November 1, 2018, its website depicted a list of the "executive leadership" positions that revealed that men occupied all positions except for one woman, who not surprisingly, leads human resources.[17]

152.    Even including the female head of HR in a definition of executive leadership, more than 83% of decision-making authority is in the hands of men.   Such a gross absence of women from senior management effectively suggests discrimination on its face.

153.    It is within this context of male-centric leadership that the systemic maternity-based discrimination was allowed to develop and flourish.   The discriminatory employment

---

[17]         http://www.avoncompany.com/aboutavon/our-people/executiveleadership/index.html.

practices that disproportionately affect pregnant and maternity status women at Avon include,

*inter alia*:

- Discretionary, subjective protocols that disfavor pregnant employees, pregnant employees that require accommodations due to pregnancy related complications, and/or employees that avail themselves of maternity leave;
- Discretionary, subjective protocols that disfavor employees that nurse after childbirth and need to pump breast milk at work;
- Discretionary, subjective protocols that relate to requests for time off, work absences or requests not to travel made by pregnant employees and/or nursing mothers;
- Discretionary, subjective protocols that disfavor pregnant employees, pregnant employees that require accommodations due to pregnancy related complications, and/or employees that avail themselves of maternity leave, and/or employees that nurse after childbirth and need to pump breast milk at work that result in unfair or invalid performance evaluations, which in turn, negatively impact compensation and promotion; and
- Repeat systemic marginalization and indifference to maternity-status employees that complain about discriminatory treatment.

## II.   Rule 23 of Federal Rules of Civil Procedure

### A.   Class Definitions

154.   Plaintiffs seek to maintain claims individually and on behalf of the proposed classes:

### Title VII Class

All female employees that have or will be employed at Avon in the U.S. from September 5, 2017 to the date of judgment that have been or will be pregnant, including those female employees that have been or will be pregnant and had pregnancy complications that required workplace accommodations; and those female employees that have been or will take maternity leave between September 5, 2017 to the date of judgment in violation of Title VII and PDA (the "Title VII Class").

### NYS Subclass and NYC Subclass

All female employees that have or will be employed at Avon in the state of New York (the "NYS Subclass") or in New York City (the "NYC Subclass") from November 13, 2015 to the date of judgment that have been or will be pregnant, including those female employees that have been or will be pregnant and had pregnancy complications that required workplace accommodations; and those female employees that have been or will take maternity leave between November 13, 2015 to the date of judgment.

**Breast Pumping Class**

All female employees that have or will be employed at Avon in the state of New York from November 13, 2015 to the date of judgment that have needed to or will need to pump breast milk during work hours (the "Breast Pumping Class").

155.     Plaintiffs are members of the proposed classes (collectively, the "Rule 23 Classes" or the "Rule 23 Class Members").

156.     Plaintiffs reserve the right to amend the definitions of the Rule 23 Classes based on discovery or legal developments.

157.     The patterns, practices or policies described in this complaint demonstrate that discrimination is common for Avon and shows that such unlawful conduct is part of Avon's operating patterns, practices or policies.

**B.     Numerosity and Impracticality of Joinder**

158.     Plaintiffs' Rule 23 Classes, upon information and belief, each consist of at least 40 individuals.  Avon presently employs more than 2900 individuals in the U.S.[18]  The Rule 23 Class Members are sufficiently numerous to make joinder of all of them impractical.

**C.     Efficiency of Class Prosecution of the Rule 23 Class Claims**

159.     Certification of the proposed Rule 23 Classes is the most efficient and economical means of resolving the questions of law and fact that are common to the claims of the Plaintiffs and Rule 23 Class Members.

160.     The individual claims of Plaintiffs require resolution of the common questions

---

[18]     In its SEC Form 10-k filed for the fiscal year ending December 31, 2015, Avon stated that the company employed about 28,300 employees globally, including 800 that worked in the U.S.  In addition, 2600 people were employed in Avon's North America business, and of these, about 2100 worked in the U.S. https://www.sec.gov/Archives/edgar/data/8868/000000886816000104/avp10k2015.htm.

Avon distinguishes employees from individuals that sell products directly to consumers, referred to as "Representatives."  Avon classifies Representatives as independent contractors and not employees.  As of December 31, 2016, Avon had nearly 6 million Representatives. https://www.sec.gov/Archives/edgar/data/8868/000119312516542758/d118227ddef14a.htm#toc118227_16
Representatives are excluded from the proposed Rule 23 Classes.

concerning whether Avon has engaged in a pattern or practice of maternity status discrimination against female employees and whether Avon's policies or practices have an adverse effect on the Rule 23 Class Members.

161.    To obtain relief for themselves and the Rule 23 Class Members, Plaintiffs will establish the existence of systemic discrimination in connection with female employees at Avon that become pregnant, avail themselves of maternity leave or need to pump breast milk at work. Without certification of the Rule 23 Classes, the same evidence and issues would be subject to litigation in a multitude of individual lawsuits with different forums with an attendant risk of inconsistent adjudications and conflicting outcomes.

162.    Certification of the Rule 23 Classes is the most efficient means of presenting the evidence and arguments necessary to resolve the underlying issues for Plaintiffs, the Rule 23 Class Members, and Avon.

**D.    Common Questions of Law and Fact**

163.    The claims alleged on behalf of the Rule 23 Classes raise questions of law and facts common to each of the Rule 23 Class Members.   These questions include *inter alia*, whether Avon:

- Treated pregnant employees differently from similarly situated non-pregnant employees that resulted in unequal and adverse treatment of pregnant employees in violation of federal, state and city law;
- Regularly failed to make reasonable accommodations for pregnant employees that required medically necessary absences;
- Implemented discretionary, subjective protocols and treatment that disfavors pregnant employees, pregnant employees that require accommodations due to pregnancy related complications, and/or employees that avail themselves of maternity leave;
- Implemented discretionary, subjective protocols and treatment that disfavors employees that nurse after childbirth and need to pump breast milk at work;

- Implemented discretionary, subjective protocols that relate to requests for time off, work absences or requests not to travel made by pregnant employees and/or nursing mothers;
- Implemented discretionary, subjective protocols and treatment that disfavors pregnant employees, pregnant employees that require accommodations due to pregnancy related complications, and/or employees that avail themselves of maternity leave, and/or employees that nurse after childbirth and need to pump breast milk at work that result in unfair or invalid performance evaluations, which in turn, negatively impact compensation and promotion;
- Regularly allowed co-workers and management to retaliate against employees needing to pump breast milk during the workday, including by subjecting such employees to adverse work conditions as compared to similarly situated employees not needing to pump breast milk at the workplace; and
- Engaged in patterns, practices and/or policies fostering and resulting in systemic unlawful discrimination against female employees with respect to their need or desire to pump and/or store breast milk;
- Engaged in repeat systemic marginalization and indifference to maternity-status employees that complained about discriminatory treatment; and
- Failed to investigate or remedy complaints about maternity status discrimination or otherwise ignored such complaints.

164.    Thus, the common question requirement of FRCP 23(a) is satisfied.

**E.    Typicality of Claims and Relief Sought**

165.    Plaintiffs are Members of the Rule 23 Classes they seek to represent.

166.    Plaintiffs' claims are typical of the claims of the Rule 23 Classes in that they all arise from the same unlawful patterns, practices and/or policies of Avon, and are based on the legal theory that these patterns, practices and/or policies violate legal rights protected by federal, state and local law.

167.    Plaintiffs allege that they and the Rule 23 Class Members were each the victim of unlawful adverse employment decisions made by Avon because they became pregnant during their employment at Avon.  The relief Plaintiffs seek for Avon's unlawful patterns, practices and/or policies is typical of the relief which is sought on behalf of the Rule 23 Class Members.

168.    The discrimination experienced by Plaintiffs was typical of that experienced by the Rule 23 Class Members.

169.    Avon discriminates against female employees who are or have been pregnant and subjects them to a work culture predominated by men.  This differential treatment has affected Plaintiffs and the Rule 23 Class Members in the same or similar ways.

170.    Avon has failed to respond adequately or appropriately to evidence and complaints of discrimination.  Plaintiffs and the Rule 23 Class Members have been affected in the same or similar ways by Avon's failure to implement adequate procedures to detect, monitor, and correct this pattern and practice of discrimination.

171.    The relief necessary to remedy the claims of Plaintiffs is the same as that necessary to remedy the claims of the Rule 23 Class Members.  Plaintiffs request individually and on behalf of the Rule 23 Class Members, declaratory and injunctive relief.  The request for a declaratory judgment is the same for Plaintiffs individually as the Class, namely, that Avon has engaged in discretionary, subjective protocols that disfavors pregnant employees, pregnant employees that require accommodations due to pregnancy related complications, and/or employees that avail themselves of maternity leave, and/or employees that nurse after childbirth and need to pump breast milk at work that resulted in violations of federal, state and city law.  The request for injunctive relief is the same for Plaintiffs individually as the Class, namely, that a permanent injunction is ordered against these discriminatory practices, as well as an order for injunctive relief that mandates new policies and practices at Avon that cease such continuing discrimination and ensures that maternity status employees' complaints will no longer be ignored or marginalized.

172.    Thus, the typicality requirement of FRCP 23(a) is satisfied.

### F.      Adequacy of Representation

173.    The interests of Plaintiffs are the same as those of the Rule 23 Class Members that they seek to represent in the instant case.  Plaintiffs are willing and able to represent the Rule 23 Class Members fairly and vigorously as they pursue their similar individual claims.  Plaintiffs have retained counsel who are qualified and experienced in employment class action litigation, and who are able to meet the time and fiscal demands necessary to litigate a class action of this size and complexity.

174.    The combined interests, experience and resources of Plaintiffs and their counsel to competently litigate the individual and the Rule 23 Class claims at issue in the instant case satisfy the adequacy of representation requirement of FRCP 23(a).

### G.      Requirements of Rule 23(b)(2)

175.    Without class certification, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations.  Specifically, all evidence of Avon's patterns, practices and/or policies, and the issue of whether they are in violation of federal, state and local law would be exchanged and litigated repeatedly.  Accordingly, certification of the proposed Rule 23 Classes is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for Plaintiffs, the Rule 23 Class Members and Avon.

176.    Avon acted on grounds, described herein, generally applicable to Plaintiffs and the Rule 23 Class Members, by adopting and following systemic patterns, practices and/or policies that are discriminatory towards pregnant female employees, women taking maternity leave, and nursing mothers that need to pump breast milk at work.  These discriminatory acts are

not sporadic or isolated, and must be addressed through final injunctive and declaratory relief with respect to Plaintiffs and the Rule 23 Class Members.

177.    Declaratory and injunctive relief flow directly and automatically from proof of the common questions of law and fact regarding the existence of systemic discrimination against the Rule 23 Class Members.

178.    Declaratory and injunctive relief are the factual and legal predicates for Plaintiffs' and the Rule 23 Class Members' entitlement to monetary and non-monetary remedies necessary to address Avon's conduct.

179.    Accordingly, injunctive and declaratory relief is among the predominant forms of relief sought in this case.

**H.    Requirements of Rule 23(b)(3)**

180.    The common issues of fact and law affecting the Rule 23 Class claims, including, but not limited to, the common issues identified in the paragraphs above, predominate over issues affecting only individual claims.

181.    A class action is superior to other available means for the fair and efficient adjudication of Plaintiffs' claims and the claims of the Rule 23 Class Members.

182.    The cost of proving Avon's pattern and practice of discrimination makes it impractical for the Rule 23 Class Members to pursue their claims individually.

**I.    Requirements of Rule 23(c)(4)**

183.    In the alternative, the Court may grant partial or issue certification pursuant to Rule 23(c)(4).  Resolving common questions of fact and law would serve to materially advance litigation for all Rule 23 Class Members.

**FIRST CAUSE OF ACTION**
**(Violations of Title VII, 42 U.S.C. §§ 2000e *et seq*. ("Title VII"), as amended by the**
**Pregnancy Discrimination Act ("the PDA"))**
**Plaintiff Ruiz individually and as Class Representative of the Title VII Class**
***Against All Defendants***

184.    Plaintiffs hereby repeat and re-allege each and every allegation in all of the preceding paragraphs as if fully set forth herein.

185.    By the actions described above, among others, in violation of Title VII, Defendants discriminated against Class Representative Ruiz and members of the Title VII Class on the basis of their gender, including pregnancy and maternity status.  Defendants denied Class Representative Ruiz and members of the Title VII Class the same terms and conditions of employment available to other employees who, during their employment at Avon were not pregnant or maternity status.

186.    Defendants subjected Class Representative Ruiz and members of the Title VII Class to disparate and adverse treatment including *inter alia*, discriminatory treatment in connection with requests for days off, work absences for pregnancy related conditions, requests not to travel for pregnancy related conditions, work responsibilities and duties, and other terms and conditions of employment.  Defendants' discriminatory treatment of Class Representative Ruiz and members of the Title VII Class marginalized pregnant female employees on a systematic level and fostered a workplace where managers subjectively imposed adverse employment decisions, including to terminate pregnant employees or employees in connection with their protected maternity status.

187.    As set forth above, Avon was on notice of its subjective, improper policies, yet failed to investigate or remedy the discrimination.

188.     As a direct and proximate result of Defendants' intentional, reckless, unlawful and discriminatory conduct in violation of Title VII, Class Representative Ruiz and members of the Title VII Class have suffered and continue to suffer harm for which they are entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

## SECOND CAUSE OF ACTION
**(Violations of the New York State Human Rights Law, N.Y. Executive Law §§ 290, *et seq*. ("NYSHRL"))**
**Plaintiffs individually and as Class Representatives of the NYS Class**
***Against All Defendants***

189.     Plaintiffs hereby repeat and re-allege each and every allegation in all of the preceding paragraphs as if fully set forth herein.

190.     By the actions described above, among others, Defendants discriminated against Class Representatives and members of the NYS Class on the basis of their pregnancy and maternity status in violation of the NYSHRL by denying Class Representatives and members of the NYS Class the same terms and conditions of employment available to other male employees and non-pregnant, non-maternity status employees.

191.     As set forth above, Avon was on notice of its subjective, improper policies, yet failed to investigate or remedy the discrimination.

192.     As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the NYSHRL, Class Representatives and members of the NYS Class have suffered and continue to suffer harm for which they are entitled to an award of damages, to the greatest extent permitted under law.

**THIRD CAUSE OF ACTION**
**(Violations of the of the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101, *et seq*. ("NYCHRL"))**
**Plaintiff Ruiz individually and as Class Representative of the NYC Class**
*Against all Defendants*

193.    Plaintiffs hereby repeat and re-allege each and every allegation in all of the preceding paragraphs as if fully set forth herein.

194.    By the actions described above, among others, Defendants discriminated against Class Representative Ruiz and members of the NYC Class on the basis of their pregnancy or maternity status in violation of the NYCHRL by denying the Class Representative Ruiz and members of the NYC Class the same terms and conditions of employment available to other male employees, non-pregnant or non-maternity status employees.

195.    As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the NYCHRL, Class Representatives and members of the NYS Class have suffered and continue to suffer harm for which they are entitled to an award of damages, to the greatest extent permitted under law.

**FOURTH CAUSE OF ACTION**
**(Violations of the New York State Human Rights Law, N.Y. Executive Law §§ 290, *et seq*. ("NYSHRL"))**
**Plaintiff Krstanoska individually, and as Class Representative of the Breast Pumping Class**
*Against all Defendants*

196.    Plaintiffs hereby repeat and re-allege each and every allegation in all of the preceding paragraphs as if fully set forth herein.

197.    By the actions described above, among others, Defendants discriminated against Class Representative Krstanoska and members of the Breast Pumping Class on the basis of her maternity status and need to need to pump breast milk during work hours, including to store breast milk, in violation of the NYSHRL, by denying Class Representative Krstanoska and

members of the Breast Pumping Class the same terms and conditions of employment available to other male employees, non-maternity status employees or nursing employees that needed to or will need to pump breast milk during work.

198.   As set forth above, Avon was on notice of its subjective, improper policies, yet failed to investigate or remedy the discrimination.

199.   As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the NYSHRL, Class Representative Krstanoska and members of the Breast Pumping Class have suffered and continue to suffer harm for which they are entitled to an award of damages, to the greatest extent permitted under law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs and the Rule 23 Class Members pray that the Court enter judgment in their favor and against Defendants, containing the following relief:

A.   A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States, the State of New York and the City of New York;

B.   An injunction and order permanently restraining Defendants and its partners, officers, owners, agents, successors, employees and/or representatives, and any and all persons acting in concert with them, from engaging in any such further unlawful conduct, including the policies and practices complained of herein;

C.   An award of damages against Defendants, or any jointly or severally liable entity or person, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiffs and the Rule 23 Class Members for all monetary and/or economic damages, including,

but not limited to, loss of past and future income, wages, compensation, seniority, and other benefits of employment;

D.      An award of damages against Defendants, or any jointly or severally liable entity or person, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiffs and the Rule 23 Class Members for all non-monetary and/or compensatory damages, including, but not limited to, compensation for her emotional distress;

E.      An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiffs and the Rule 23 Class Members, including, but not limited to, loss of income, earned bonus pay, reputational harm and harm to professional reputation, in an amount to be determined at trial, plus prejudgment interest;

F.      An award of punitive damages, and any applicable penalties in an amount to be determined at trial;

G.      Prejudgment interest on all amounts due;

H.      An award of costs that Plaintiffs and the Rule 23 Class Members have incurred in this action, including, but not limited to, expert witness fees, as well Plaintiffs and the Rule 23 Class Members' reasonable attorneys' fees and costs to the fullest extent permitted by law; and,

I.      Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: November 13, 2018
New York, New York

Respectfully submitted,

**WIGDOR LLP**

By: _____
Jeanne M. Christensen
Hilary J. Orzick

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
jchristensen@wigdorlaw.com
horzick@wigdorlaw.com

*Counsel for Plaintiffs*