UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X
                                    :

CAROLINE RUIZ, OLIVERA          :
KRSTANOSKA, and MAXINE RIVAS, *on*  :
*behalf of themselves and a class of similarly*  :
*situated individuals*,               :
                                     :

                        Plaintiffs,    :

                                  :

            - against -         :

                                  :

NEW AVON LLC and AVON PRODUCTS,  :
INC.,                            :
                                     :

                     Defendants.  :

                                  :
------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___9/22/2019___

18-CV-9033 (VSB)

**OPINION & ORDER**

Appearances:

Hilary Joy Orzick
Jeanne-Marie Bates Christensen
Wigdor LLP
New York, New York
*Counsel for Plaintiffs*

Felice B. Ekelman
Sarah Katherine Hook
Jackson Lewis P.C.
New York, New York
*Counsel for Defendant New Avon LLC*

Gillian Egan (New Orleans, Louisiana)
Keisha-Ann Grace Gray (New York, New York)
Margaret F. Swetman (New Orleans, Louisiana)
Nicole A. Eichberger (New Orleans, Louisiana)
Proskauer Rose LLP
*Counsel for Defendant Avon Products, Inc.*

VERNON S. BRODERICK, United States District Judge:

       Plaintiffs Caroline Ruiz, Olivera Krstanoska, and Maxine Rivas bring this employment

discrimination putative class action against their prior employers Avon Products, Inc. ("Avon

Products") and New Avon LLC ("New Avon"), alleging that they were discriminated against on the basis of pregnancy and the need to pump breast milk at work, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*; the New York State Human Rights Law, N.Y. Exec. L. § 290, *et seq.*; and the New York City Human Rights Law, N.Y.C. Admin Code § 8-101, *et seq.*

Before me are (1) New Avon's motion to compel Plaintiff Ruiz to resolve her claims against New Avon through arbitration; (2) motions from both Defendants to dismiss Plaintiffs' claims in their entirety pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6); and (3) Avon Products' motion to strike certain allegations in Plaintiffs' Complaint relating to a fourth, anonymous Avon Products employee, pursuant to Federal Rule of Civil Procedure 12(f). Because any agreement by Ruiz to arbitrate was superseded by her subsequent employment agreement, which requires all disputes between Ruiz and New Avon to be resolved in New York courts, New Avon's motion to compel arbitration is DENIED. Defendants' motions to dismiss are GRANTED IN PART and DENIED IN PART. Specifically, Ruiz's claims against Avon Products are dismissed because she failed to exhaust administrative remedies with respect to her Title VII claim against Avon Products and because she did not satisfactorily plead that she was employed by Avon Products. The claims filed by Krstanoska and Rivas against New Avon are also dismissed because they did not allege that New Avon qualified as their employer. In addition, all of Rivas's claims and certain of Krstanoska's claims against Avon Products are barred by the relevant statute of limitations. Finally, Avon Products' motion to strike certain allegations from the Complaint is DENIED.

# I.     __Background__[1]

Defendant Avon Products is a publicly traded beauty company, which operates in approximately 70 countries. (Compl. ¶ 38.) In March 2016, Avon Products spun off its North American business, including Canada, by forming Defendant New Avon, a privately held limited liability company. (*Id.*) New Avon "is headquartered at One Liberty Plaza, New York, New York," and is controlled by private equity firm Cerberus Capital Management, L.P. (*Id.* ¶¶ 38, 40.) Avon Products holds a minority share in New Avon and "continues to actively operate and participate in the Company's North American business." (*Id.* ¶ 39.)

## A.     *Plaintiff Ruiz*

In January 2018, Caroline Ruiz began working for New Avon in New York, New York as the Global Head of North America Indirect Procurement. (Compl. ¶¶ 35, 51.)[2] New Avon offered Ruiz a position on November 10, 2017 and Ruiz initially accepted that position on November 14, 2017 by signing an employment agreement which contained a "Governing Law: Jurisdiction: Jury Trial Waiver" clause, providing that with respect to "[a]ny and all actions or controversies arising out of" the employment agreement, Ruiz and New Avon "irrevocably consent and submit to the sole exclusive jurisdiction of the United States District Court for New

---

[1] The following factual summary is drawn from the allegations of the Second Amended Class Action Complaint ("Compl." or "Complaint," Doc. 24), unless otherwise indicated, which I assume to be true for purposes of this motion. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). My references to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[2] Although Plaintiffs refer to Defendants collectively as "Avon" throughout the Complaint, they do not contest Defendants' assertion that Ruiz was formally employed by New Avon, while Krstanoska and Rivas were employed by Avon Products. (*See* New Avon Br. 11–12; Pls.' Opp'n 12 n. 13.) ("New Avon Br." refers to Defendant New Avon LLC's Memorandum of Law in Support of its Motion to Compel Plaintiff Caroline Ruiz to Arbitration and Dismiss or Stay Plaintiff Caroline Ruiz's Claims; and Dismiss Plaintiff Olivera Krstanoska and Plaintiff Maxine Rivas' Claims as Against New Avon LLC, filed February 25, 2019. (Doc. 46.) "Pls.' Opp'n" refers to the Omnibus Memorandum of Law in Opposition to the Motion to Compel Arbitration, Motions to Dismiss and Motion to Strike Filed by Defendants New Avon LLC and Avon Products, Inc., filed April 11, 2019. (Doc. 55.).) Plaintiffs further acknowledge that New Avon was not created until 2016, several years after both Rivas and Krstanoska began working for Avon Products, in 2009 and 2014, respectively. (*See* Compl. ¶¶ 38–39, 100, 172.)

York, or the Courts of the State of New York." (Germinario Aff. Ex. A, § 19; *id.* Ex. C.)[3] Subsequently, on November 27, 2017, Ruiz signed an Employment Arbitration Agreement, which advised her that, "as a condition of your employment, or your continued employment with [New Avon], you and [New Avon] agree that any dispute arising from, related to, or in connection with your past, present and/or future association and/or employment with [New Avon] . . . must be resolved only through binding arbitration on an individual basis." (*Id.* Ex. F.)

Before the commencement of her employment with New Avon, Ruiz requested that her start date be delayed until January 2018. New Avon agreed to Ruiz's request and, after Ruiz asked whether "we should sign a new contract with a new starting date? I am not sure," New Avon responded that executing a new employment agreement would be a "good idea." (*Id.* Ex. G.) On December 13, 2017, New Avon provided Ruiz with a new employment agreement reflecting Ruiz's updated start date, and requested that Ruiz execute and return it. (*Id.*) Ruiz did so on December 19, 2017. (*Id.* Ex. H.) The revised employment agreement contained the same "Governing Law" clause as the previously executed employment agreement. (*Id.* Ex. G, § 19.)

Shortly after she began working at New Avon, Ruiz—who was pregnant at the time—began to experience heavy bleeding and was informed that there was a high likelihood that she would suffer a miscarriage. (Compl. ¶¶ 61–62.) On February 1, 2018, Ruiz informed New Avon's Human Resources ("HR") Department of her high-risk pregnancy and her physician's recommendation that she should work from home for a limited period of time. (*Id.* ¶¶ 66–67.) At HR's request, Ruiz submitted a doctor's note recommending that she work remotely from

---

[3] These allegations relate to New Avon's motion to compel arbitration, (Doc. 45), which courts evaluate under a standard "'similar to that applicable [to] a motion for summary judgment,'" thereby permitting me to consider "materials outside the complaint." *Alfonso v. Maggies Paratransit Corp.*, 203 F. Supp. 3d 244, 247 (E.D.N.Y. 2016) (quoting *Bensadoun v. Jobe–Riat*, 316 F.3d 171, 175 (2d Cir. 2003)). ("Germinario Aff." or "Germinario Affidavit" refers to the Affidavit of John Germinario in Support of Motion to Compel Arbitration and Dismiss Action, filed February 25, 2019. (Doc. 47.).)

February 5 through February 9, 2018. (*Id.* ¶¶ 68–69.) On February 2, 2018—one day after Ruiz informed New Avon of her pregnancy—Ruiz's supervisor, Raj Nath, advised Ruiz that New Avon was troubled by certain "performance issues"; when Ruiz discussed her pregnancy concerns with him, he responded, "Your health isn't my concern, but your performance is." (*Id.* ¶¶ 71–79.) New Avon subsequently denied Ruiz's request to work remotely for five days. (*Id.* ¶ 80.) On February 5, 2018, New Avon terminated Ruiz for alleged "performance deficiencies." (*Id.* ¶¶ 89–91.)

### B.    *Plaintiff Krstanoska*

In January 2014, microbiologist Olivera Krstanoska began working at Avon Products' Global Research and Development Center in Suffern, New York. (Compl. ¶ 100.) Approximately eight months after joining Avon Products, Krstanoska learned that she was pregnant with her first child. (*Id.* ¶ 101.) Almost immediately after disclosing her pregnancy, Krstanoska was subjected to an unsafe working environment. (*Id.* ¶ 102.) Because certain of her tasks as a microbiologist exposed her to chemicals that posed a health risk to pregnant women, Krstanoska explained to her supervisors that she would need to avoid those tasks during her pregnancy. (*Id.* ¶¶ 103–04.) Specifically, Krstanoska was reluctant to work with a chemical called HC Agar, which was known to be particularly "harmful to pregnant mothers." (*Id.* ¶ 105.) However, despite the well-known risks of these hazardous chemicals, Krstanoska's supervisor, Kathy LaPointe, insisted that Krstanoska continue to work with them. (*Id.* ¶ 106.) Throughout Krstanoska's pregnancy, LaPointe repeatedly belittled Krstanoska and reprimanded her for taking steps to protect her health, including by wearing a mask to prevent breathing in toxic chemicals and refusing to work with certain of the most toxic chemicals, including HC Agar. (*Id.* ¶¶ 107, 114.) Krstanoska complained about this harassment but, to her knowledge, Avon

Products did not investigate her complaints or escalate them to HR. (*Id.* ¶¶ 115–16.)

After the birth of her first child, Krstanoska went on maternity leave, returning in October 2015. (*Id.* ¶ 117.) When she returned, she discovered that she no longer had her own workstation or lab equipment and was required to use the equipment of her colleagues after they had completed their work, making it difficult for Krstanoska to perform her work to the best of her abilities. (*Id.* ¶¶ 118–21.) False rumors began to spread among her colleagues that Krstanoska was suffering from post-partum depression. (*Id.* ¶ 124.) During this time, Krstanoska was nursing and therefore needed to pump breast milk during the workday. (*Id.* ¶ 151.) Krstanoska's colleagues and supervisors repeatedly harassed her and accused her of attempting to avoid her work responsibilities by taking short breaks throughout the day to pump; her co-workers also made disparaging remarks regarding Krstanoska's decision to breastfeed. (*Id.* ¶¶ 153–54.)

In November 2015, Krstanoska became pregnant with her second child. (*Id.* ¶ 129.) When Krstanoska again requested that she not be required to work with HC Agar during her pregnancy, she was penalized in her year-end review for making that request. (*Id.* ¶¶ 130–33.) Her supervisor, Donald English, also began excluding Krstanoska from calls and team meetings and required Krstanoska to work longer hours than some of her colleagues. (*Id.* ¶¶ 142–44.) Krstanoska continued to complain to HR about the discriminatory treatment on a weekly basis. (*Id.* ¶ 148.)

The harassment continued to escalate through April 2016, at which point Krstanoska was six months pregnant. (*Id.* ¶¶ 159–60.) On April 22, 2016, English aggressively confronted Krstanoska and began yelling at her about her efforts to document her hostile work environment; Krstanoska feared that English might attempt to hit or harm her. (*Id.* ¶ 159.) When Krstanoska

complained of English's conduct, she was subsequently transferred to a new position in a different department, toxicology. (*Id.* ¶¶ 162–64.) Krstanoska had no experience in toxicology and was unqualified for her new position; in addition, she was assigned the workload of three previous employees. (*Id.* ¶ 165.) Recognizing that Avon Products had "set her up for failure" and had also declined to discipline English for his treatment of her, Krstanoska continued to make complaints to HR. (*Id.* ¶¶ 164, 166, 170.) She was constructively discharged approximately two weeks after her transfer to toxicology. (*Id.* ¶ 171.)

### C. *Plaintiff Rivas*

In 2009, Maxine Rivas began working for Avon Products as a lab technician in Suffern, New York. (Compl. ¶ 172.) Donald English was also Rivas's supervisor. (*Id.*) Rivas became pregnant for the first time shortly after she began working at Avon Products. (*Id.* ¶ 179.) Rivas became aware of rumors about the mistreatment of pregnant employees by English and Avon Products, (*id.* ¶¶ 181–82, 188), and therefore made no complaints and requested no accommodations during her pregnancy, even though she was required to work with HC Agar, (*id.* ¶ 189). Rivas took six weeks of maternity leave after the birth of her first child and, upon returning to work, was afraid to pump breast milk because she feared retaliation from English. (*Id.* ¶¶ 193, 196.) In 2010, Rivas discovered she was pregnant with her second child. (Christensen Decl. Ex. 10, ¶ 199.)[4] During her second pregnancy, English substantially increased Rivas's workload. (Compl. ¶ 202.) Notwithstanding the fact that Rivas was required to perform the work of several employees at a more senior level, English refused to formally promote Rivas. (*Id.*) Rivas's subsequent complaints to HR went unaddressed. (*Id.* ¶¶ 206–07.)

---

[4] In the Declaration of Jeanne M. Christensen ("Christensen Declaration" or "Christensen Decl.," Doc. 56), which Plaintiffs filed in conjunction with their opposition brief, Plaintiffs admit two factual errors contained in the Complaint: Rivas discovered her second pregnancy in 2010, not 2012, and returned from maternity leave following that pregnancy in 2011, not 2016. (*See* Christensen Decl. ¶ 36; *id.* Ex. 10, ¶¶ 199, 209.)

Rivas returned from her second maternity leave in 2011, (Christensen Decl. Ex. 10, ¶ 209), and again opted not to breast feed for fear of retaliation, (Compl. ¶ 209). As a result of the increased anxiety she faced because of her maternity leave, Rivas sought counseling and was prescribed medication for stress and depression. (*Id.* ¶ 210.)

At some point during the 2014–2015 time period, Rivas was temporarily transferred to another lab position. (*Id.* ¶ 204.) In 2016, Rivas asked to be promoted given that she was still employed as a lab technician but was performing work equal to that of a senior technician; English refused and advised Ruiz to "go back to school." (*Id.* ¶ 211.) Rivas was constructively discharged from Avon Products in the summer of 2016. (*Id.* ¶ 212.)

### D. *Jane Smith*

"Jane Smith," who is not a plaintiff in this action, also worked in Avon Products' Suffern, New York office beginning in 2010. (Compl. ¶ 215.) Smith became pregnant in 2012. (*Id.* ¶ 216.) When she returned to work after her first pregnancy, Smith was still nursing her child and therefore needed to pump breast milk during the workday. (*Id.* ¶ 218.) Because Avon Products only had a single room for nursing mothers to use for this purpose (despite employing approximately 300–350 individuals), the room was often occupied and unavailable, leaving Smith unable to pump. (*Id.* ¶¶ 219–23.) On one occasion, Smith was unable to pump in either the morning or the afternoon because the designated room was occupied; as a result, she developed mastitis and was required to undergo emergency surgery. (*Id.* ¶¶ 223–28.) Smith became pregnant again in 2014 and her physician identified her pregnancy as "high risk." (*Id.* ¶ 235.) Avon Products rejected Smith's subsequent request that she be permitted to work remotely, and Smith ultimately suffered a miscarriage. (*Id.* ¶¶ 236, 241.) In February 2015, Smith became pregnant again. (*Id.* ¶ 247.) Shortly after she provided notice of her pregnancy,

Avon Products abruptly terminated her employment, stating that Smith's position had been eliminated due to an alleged "downsizing of the marketing and product development" department. (*Id.* ¶ 249.)

## II.    Procedural History

On July 2, 2018, Ruiz filed a Charge of Discrimination with the Equal Employment Opportunity Commission (the "EEOC Charge"). (Compl. ¶ 43.) In her EEOC Charge, Ruiz identified "New Avon LLC" as her employer and alleged that New Avon had discriminated against her on the basis of pregnancy. (Eichberger Decl. Ex. 1.)[5] On August 3, 2018, Ruiz received a Notice of Right to Sue from the EEOC. (Compl. ¶ 44.)

On October 3, 2018, Ruiz filed a complaint in this Court against New Avon and Raj Nath, alleging, among other claims, pregnancy discrimination and retaliation claims under Title VII, 42 U.S.C. § 2000e, *et seq.*; the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.*; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290, *et seq.*; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin Code § 8-101, *et seq.* (*See generally* Doc. 1.) Ruiz's initial complaint did not name Avon Products as a defendant. (*Id.*) Before serving her complaint, Ruiz filed an Amended Class Action Complaint ("Amended Complaint"), pursuant to Federal Rule of Civil Procedure 15(a)(1), on November 13, 2018. (Doc. 10.) The Amended Complaint added Krstanoska and a class of similarly situated individuals as plaintiffs and Avon Products as a defendant, and dropped Nath as a defendant. (*Id.*) In the Amended Complaint, Ruiz alleged Title VII, NYSHRL, and NYCHRL claims of pregnancy discrimination against both Defendants, while Krstanoska alleged NYSHRL claims of

---

[5] "Eichberger Decl." or "Eichberger Declaration" refers to the Declaration of Nicole A. Eichberger, Esq., filed February 25, 2019. (Doc. 50.)

discrimination on the basis of pregnancy and the need to pump breast milk at work against both Defendants. (*Id.*)[6]

On December 11, 2018, before serving the Amended Complaint, Plaintiffs sought leave to file a second amended complaint. (Docs. 20–22.) After receiving leave of Court, (*see* Doc. 23), Plaintiffs filed the Second Amended Class Action Complaint (the operative complaint, referred to herein as "Complaint") on December 14, 2018, (Doc. 24). The Complaint adds Rivas—who alleges pregnancy discrimination claims under the NYSHRL against both Defendants—as a plaintiff.

On February 25, 2019, New Avon filed a motion seeking to dismiss Ruiz's claims pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and to compel Ruiz to resolve those claims through arbitration, (Doc. 45), along with a supporting memorandum of law, (Doc. 46), and the Germinario Affidavit, with exhibits, (Doc. 47). New Avon's motion also seeks to dismiss Krstanoska's and Rivas's claims pursuant to Rule 12(b)(6), on the ground that New Avon was not their employer. (*See* Doc. 46.) On the same day, Avon Products also moved to dismiss all of Plaintiffs' claims against Avon Products for failure to state a claim pursuant to Rule 12(b)(6). (Doc. 48.) Avon Products' motion was accompanied by a supporting memorandum of law, (Doc. 49), and the Eichberger Declaration, with exhibits, (Doc. 50). On February 25, 2019, Avon Products also filed a motion to strike the allegations in Plaintiffs' Complaint relating to Jane Smith, along with a supporting memorandum of law. (Docs. 51–52.) On April 11, 2019, Plaintiffs filed an omnibus memorandum of law in opposition to Defendants' motions, (Doc. 55), along with the Christensen Declaration, with exhibits, in support, (Doc. 56). On May 2, 2019, Avon Products submitted separate replies in

---

[6] In the Amended Complaint, Ruiz dropped all of her retaliation claims and ADA claims. (*See generally* Doc. 10.)

support of its motions to dismiss and to strike.  (Docs. 57–58.)  New Avon submitted its reply, (Doc. 61), along with a supplemental affidavit, (Doc. 60), on the same day.

### III.  New Avon's Motion to Compel Arbitration

New Avon moves to compel arbitration of Plaintiff Ruiz's claims pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA"), and, in turn, to dismiss Ruiz's claims for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  Because the employment agreement that Ruiz signed after she executed New Avon's Employment Arbitration Agreement contains a mandatory forum selection clause establishing that all disputes relating to Ruiz's employment must be submitted to the "sole exclusive jurisdiction" of this Court or New York state courts, I conclude that Ruiz is not obligated to submit her claims against New Avon to arbitration.

### A.  *Legal Standard*

Section 4 of the FAA requires courts to compel arbitration in accordance with the terms of an arbitration agreement, upon the motion of either party to the agreement, provided that there is no issue regarding its creation.  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citing 9 U.S.C. § 2).  A court must therefore first determine (1) whether the parties entered into a valid agreement to arbitrate, and (2) whether the dispute falls within the scope of that arbitration agreement.  *See In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011); *see also Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) ("[C]ourts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement nor (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue."); *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004) (stating that

courts must consider: (1) "whether the parties agreed to arbitrate," (2) "the scope of that

agreement," (3) "if federal statutory claims are asserted, [whether] Congress intended those

claims to be nonarbitrable," and (4) if some, but not all, of the claims in the case are arbitrable,

whether "to stay the balance of the proceedings pending arbitration" (quoting *Oldroyd v. Elmira*

*Sav. Bank, FSB*, 134 F.3d 72, 75–76 (2d Cir. 1998))). "'In the context of motions to compel

arbitration[,] . . . the court applies a standard similar to that applicable [to] a motion for summary

judgment,' and courts may therefore consider materials outside the complaint, including the

arbitration agreement itself." *Alfonso v. Maggies Paratransit Corp.*, 203 F. Supp. 3d 244, 247

(E.D.N.Y. 2016) (quoting *Bensadoun v. Jobe–Riat*, 316 F.3d 171, 175 (2d Cir. 2003)).

"[T]he ultimate question of whether the parties agreed to arbitrate is determined by state

law." *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002).[7] Under New York law, the party

seeking arbitration bears the burden of proving that a valid arbitration agreement exists, *see Am.

Centennial Ins. Co. v. Williams*, 649 N.Y.S.2d 190, 191 (2d Dep't 1996), but need only prove the

existence of a valid arbitration agreement by a preponderance of the evidence, *see Progressive

Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venez.*, 991 F.2d 42, 46 (2d Cir. 1993).

"Arbitration agreements are considered contracts." *Nat'l Credit Union Admin. Bd. v. Goldman,

Sachs & Co.*, 775 F.3d 145, 148 (2d Cir. 2014) (citing *Rent-A-Center, W., Inc. v. Jackson*, 561

U.S. 63, 67 (2010)). The general rule under New York law is that "a party who executes a

contract is considered bound by the terms of that contract." *Stern v. Espeed, Inc.*, No. 06 Civ.

958(PKC), 2006 WL 2741635, at *1 (S.D.N.Y. Sept. 22, 2006).

---

[7] Both of the agreements at issue specify that they are to be governed under New York law. (*See* Germinario Aff. Ex. F, at 1; *id.* Ex. G, § 19.) I will therefore apply New York law to the question of whether the parties agreed to arbitrate.

B. *Analysis*

New Avon contends that Ruiz is bound to arbitrate her claims because, on November 27, 2017, Ruiz signed New Avon's Employment Arbitration Agreement (the "Arbitration Agreement," Germinario Aff. Ex. F). (New Avon Br. 2.) Ruiz responds that the Arbitration Agreement was superseded by the terms of the employment agreement that Ruiz signed on December 19, 2017 (the "December Employment Agreement," Germinario Aff. Ex. G). (Pls.' Opp'n 4–8.)[8] The dispute between Ruiz and New Avon therefore does not concern whether Ruiz's claims fall within the scope of the Arbitration Agreement, but rather, whether the Arbitration Agreement is valid in light of the December Employment Agreement. Thus, "[b]ecause the question presented here concerns whether an arbitration agreement remains in force in light of a later-executed agreement," there is no presumption in favor of arbitrability. *Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.*, 764 F.3d 210, 215 (2d Cir. 2014) ("Courts . . . apply a 'presumption of arbitrability,' but only if an 'enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand.'" (quoting *Granite Rock Co.*, 561 U.S. at 301)); *see also Applied Energetics, Inc. v. NewOak Capital Mkts., LLC*, 645 F.3d 522, 526 (2d Cir. 2011) ("[W]hile doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made.").

The Arbitration Agreement that Ruiz signed on November 27, 2017 provides, "as a condition of your employment, or your continued employment with [New Avon], you and [New

---

[8] The parties appear to agree that Ruiz's employment agreement consisted of three documents: (i) an offer letter, (ii) an Employment Term Sheet, and (iii) an Employee Covenants Agreement. (*See* Germinario Aff. Ex. G; Christensen Decl. Ex. 1.) The parties disagree, however, as to which employment agreement governs—the employment agreement signed by Ruiz on November 14, 2017 (the "November Employment Agreement"), or the December Employment Agreement, which Ruiz executed on December 19, 2017.

Avon] agree that any dispute arising from, related to, or in connection with your past, present and/or future association and/or employment with [New Avon] . . . must be resolved only through binding arbitration on an individual basis." (Germinario Aff. Ex. F.) The Arbitration Agreement goes on to specify the types of claims covered by the agreement, including "all employment related disputes of whatever nature . . . including [claims related to] discrimination . . . including, without limitation, any claims arising under . . . Title VII of the Civil Rights Act of 1964, as amended . . . and any and all other state or federal statutory and common law claims addressing the same or similar subject matters." (*Id.*)

Although Ruiz initially signed New Avon's employment agreement on November 14, 2017, (*see* Germinario Aff. Ex. C), the parties subsequently agreed to delay Ruiz's start date from December 2017 until January 8, 2018, (*see id.* Ex. G). As a result, New Avon provided to Ruiz—and on December 19, 2017, Ruiz executed—a new employment agreement with her new start date. (*Id.* Exs. G, H.) The December Employment Agreement provides (as did the November Employment Agreement):

> Any and all actions or controversies arising out of this Agreement or the termination hereof or thereof, including, without limitation, tort claims, shall be construed and enforced in accordance with the internal laws of the State of New York, without regard to the conflict of law principles thereof. *With respect to any such actions or controversies, the Parties hereto hereby [] irrevocably consent and submit to the sole exclusive jurisdiction of the United States District Court for New York or the Courts of the State of New York . . . .*"

(*Id.* Ex. G, § 19.) Ruiz maintains that "the latest-executed agreement containing the forum selection clause controls." (Pls.' Opp'n 7.)

Without citing to any legal authority, New Avon responds that because the only material change between the November Employment Agreement and the December Employment Agreement is Ruiz's start date, which was modified at Ruiz's request, the earlier November

Employment Agreement "was the operative [employment] agreement." (New Avon Reply 3.)[9] However, New Avon's position runs contrary to the "well[-]established" principle under New York law that "a subsequent contract regarding the same matter will supersede the prior contract." *Barnum v. Millbrook Care Ltd. P'ship*, 850 F. Supp. 1227, 1236 (S.D.N.Y.) (citing *Coll. Auxiliary Servs. of State Univ. Coll. at Plattsburgh, Inc. v. Slater Corp.*, 456 N.Y.S.2d 512 (3d Dep't 1982)), *aff'd*, 43 F.3d 1458 (2d Cir. 1994); *see also Applied Energetics*, 645 F.3d at 526 (observing that "in deciding whether a contractual obligation to arbitrate exists, 'courts should generally apply state-law principles that govern the formation of contracts'" (quoting *Mehler v. Terminix Int'l Co.*, 205 F.3d 44, 48 (2d Cir. 2000))). It is undisputed that (1) New Avon agreed that executing a new employment agreement with Ruiz's new start date was a "good idea," (2) New Avon sent Ruiz the December Employment Agreement for her review and requested that she sign it and return it to New Avon, and (3) Ruiz followed those instructions. (*See* Germinario Aff. Exs. G, H.) Not only is the December Employment Agreement a "subsequent contract regarding the same matter" as the November Employment Agreement but, to the extent the December Employment Agreement and the November Employment Agreement conflict—that is, with respect to Ruiz's start date—New Avon does not dispute that the December Employment Agreement contains the correct information. I therefore find that the December Employment Agreement is Ruiz's operative employment agreement.

---

[9] New Avon concedes that the November Employment Agreement "inadvertently included a New York courts forum selection clause," (New Avon Reply 2), although New Avon's assertion that the clause was included "inadvertently" rings hollow given that the very same clause appears in the December Employment Agreement. ("New Avon Reply" refers to Defendant New Avon LLC's Reply Memorandum of Law in Further Support of its Motion to Compel Plaintiff Caroline Ruiz to Arbitration and Dismiss or Stay Plaintiff Caroline Ruiz's Claims; and Dismiss Plaintiff Olivera Krstanoska and Plaintiff Maxine Rivas' Claims as Against New Avon LLC, filed May 2, 2019. (Doc. 61.).) Perhaps in recognition of the fact that it cannot avoid the plain language of the forum selection clause, New Avon attempts to circumvent the clause in the November Employment Agreement on the theory that the Arbitration Agreement was executed after Ruiz signed the November Employment Agreement and that the Arbitration Agreement therefore supersedes the November Employment Agreement to the extent that they conflict.

I next turn to the question of whether the forum selection clause contained in the December Employment Agreement supersedes the earlier-signed Arbitration Agreement. Relying heavily on the Second Circuit's 2005 decision *Bank Julius Baer & Co. v. Waxfield Ltd.*, 424 F.3d 278, New Avon contends that the December Employment Agreement does not preclude enforcement of the Arbitration Agreement. (New Avon Reply 2–7.) In *Julius Baer*, the Second Circuit held that an arbitration agreement was not superseded by a subsequent agreement between plaintiff bank and its customer providing that "[w]ithout limiting the right of [plaintiff] to bring any action or proceeding against [defendant] . . . in the courts of other jurisdictions, [defendant] hereby irrevocably submits to the jurisdiction of any New York State or Federal court sitting in New York City" and "agrees that any Action *may* be heard" in such courts. 424 F.3d at 282. The subsequent agreement further specified that "all the rights and remedies provided in this Agreement are *cumulative and not exclusive* of any rights or remedies provided under any other agreement or by law or in equity." *Id.* (emphasis added).

The contractual language at issue in *Julius Baer* and the contractual language at issue here are materially different; therefore, *Julius Baer* is not controlling. Decisions by the Second Circuit issued after *Julius Baer* support this conclusion. Specifically, the Second Circuit has held that broadly worded forum selection clauses contained in later-signed agreements do supersede prior agreements to arbitrate. In *Applied Energetics, Inc. v. NewOak Capital Markets, LLC*, a developer of manufacturing technology entered into an engagement agreement with defendant broker–dealer, which provided that "any dispute arising out of or relating to this [Agreement] and/or the transactions contemplated hereby or thereby . . . shall be resolved through binding arbitration." 645 F.3d at 523. Approximately one month later, the parties signed another engagement agreement, which omitted any reference to arbitration and provided that "any

dispute arising out of this Agreement shall be adjudicated in the Supreme Court, New York County or in the federal district court for the Southern District of New York." *Id.* Similarly, in *Goldman, Sachs & Co. v. Golden Empire Schools Financing Authority*, plaintiffs (underwriters and broker–dealers) were FINRA members bound by FINRA Rule 12200, which states that members "must arbitrate a dispute if arbitration is requested by the customer and the dispute arises in connection with the business activities of the member." 764 F.3d at 214 (internal quotation marks omitted). However, plaintiffs also signed broker–dealer agreements with defendant customers, which included a forum selection clause providing that "[t]he parties agree that all actions and proceedings arising out of this Broker–Dealer Agreement or any of the transactions contemplated hereby shall be brought in the United States District Court in the County of New York and that, in connection with any such action or proceeding, submit to the jurisdiction of, and venue in, such court." *Id.* at 212. In both cases, the Second Circuit held that the later-executed agreement containing a forum selection clause superseded any prior agreement or obligation to arbitrate. *See id.* at 212; *Applied Energetics*, 645 F.3d at 523.

Both *Applied Energetics* and *Goldman* distinguished the New York forum selection clause at issue in *Julius Baer* as "non-exclusive" and capable of being read as "complementary, rather than contradictory, to the parties' initial agreement to arbitrate." *Applied Energetics*, 645 F.3d at 525; *see also Goldman*, 764 F.3d at 215. By contrast, the Second Circuit found that the forum selection clauses at issue in *Applied Energetics* and *Goldman* could not be reconciled with the competing arbitration provisions as "[b]oth [of the competing] provisions are all-inclusive, both are mandatory, and neither admits the possibility of the other." *Applied Energetics*, 645 F.3d at 525; *see also Goldman*, 764 F.3d at 216 ("Unlike the clause in *Bank Julius*, which simply waived objection to jurisdiction in New York, the clause here is all-inclusive and mandatory.").

The forum selection clause in the December Employment Agreement more closely tracks the language of the exclusive forum selection clauses at issue in *Applied Energetics* and *Goldman* than the non-exclusive clause at issue in *Julius Baer*, a decision which—in any event— is of limited precedential value.[10]  The December Employment Agreement broadly requires the parties, with respect to "[a]ny and all actions or controversies arising out of [the December Employment Agreement] or the termination hereof," to "irrevocably consent and submit to the sole exclusive jurisdiction of the United States District Court for New York or the Courts of the State of New York."  (Germinario Aff. Ex. G, § 19.)  This language—which encompasses any dispute relating to Ruiz's employment by New Avon—is both mandatory and exclusive, and cannot be reconciled with the parties' prior agreement to arbitrate all disputes.  Moreover, as in both *Applied Energetics* and *Goldman*, the December Employment Agreement contains a merger clause, which provides that the December Employment Agreement "contains the entire agreement between the Parties with respect to the subject matter hereof and supersedes all prior agreements and understandings, oral or written, between the Parties with respect to the subject matter hereof."  (*Id.* § 17; *see also Goldman*, 764 F.3d at 216 (considering it important that, "as in *Applied Energetics*, the later-executed agreements have a merger clause stating that they 'contain the entire agreement between the parties relating to the subject matter hereof'").)

---

[10] The Second Circuit has explained that *Julius Baer* has been overruled to the extent the decision suggested that the presumption in favor of arbitration was relevant to the determination of whether a later-executed agreement containing a forum selection clause superseded an earlier-signed arbitration agreement.  *See Goldman*, 764 F.3d at 215 n.3 (explaining that, on this point, *Julius Baer* "is no longer good law in the wake of the Supreme Court's subsequent decision in *Granite Rock*").  The Supreme Court in *Granite Rock* made clear that the presumption of arbitrability does not apply where the dispute relates to the validity—as opposed to the scope—of an arbitration agreement.  *See* 561 U.S. at 302.  It is clear that this misapplied presumption played at least some role in the outcome of *Julius Baer*.  *See Julius Baer*, 424 F.3d at 284 ("Under our cases, if there is a reading of the various agreements that permits the Arbitration Clause to remain in effect, we must choose it:  The existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." (internal quotation marks omitted)).

New Avon's attempts to avoid the holdings of *Applied Energetics* and *Goldman* are unavailing. First, New Avon points out that the December Employment Agreement does not make any reference to arbitration, rendering the clause "at least ambiguous." (New Avon Reply 4–5 (quoting *Julius Baer*, 424 F.3d at 284).) However, the Second Circuit made clear in *Goldman* that "there is no requirement that the forum selection clause mention arbitration," so long as the later-executed agreement containing the forum selection clause cannot be reconciled with an earlier agreement to arbitrate. *See* 764 F.3d at 215. The forum selection clause here, which commits all disputes relating to Ruiz's employment to the "sole exclusive jurisdiction" of New York courts, is sufficiently broad to preclude the possibility of arbitration. Second, New Avon argues that *Goldman* is distinguishable on the ground that the *Goldman* parties' obligation to arbitrate arose under the FINRA rules, as opposed to a separate written arbitration agreement. (New Avon Reply 3 n.1.) While this may be true, the language of *Goldman* is broad and its holding is not confined to the FINRA context: the *Goldman* court expressly "h[e]ld that a forum selection clause requiring 'all actions and proceedings' to be brought in federal court supersedes an earlier *agreement to arbitrate*." 764 F.3d at 215 (emphasis added).

Because the December Employment Agreement contains a mandatory forum selection clause establishing that all disputes relating to Ruiz's employment or the termination thereof must be submitted to the "sole exclusive jurisdiction" of this Court or New York state courts, I find that it supersedes the parties' earlier, conflicting agreement to arbitrate and that Ruiz may continue to litigate her employment discrimination claims against New Avon in this Court. New Avon's motion to compel arbitration and to dismiss Ruiz's claims pursuant to Federal Rule of Civil Procedure 12(b)(1) is therefore denied.

## IV. **Defendants' Motions to Dismiss for Failure to State a Claim**

### A. *Legal Standard*

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Finally, although allegations contained in a complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.*; *see also Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (courts are "not bound to accept 'conclusory allegations or legal conclusions masquerading as factual conclusions'" (quoting *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002))).

A complaint is "deemed to include any written instrument attached to it as an exhibit or

any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (citation omitted). A court may also consider any matters that are subject to judicial notice, including publicly filed documents. *Cortec Indus., Inc. v. Sum Holdings L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).

### B. *Analysis*

Defendants move to dismiss Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for a variety of reasons, including that (1) Ruiz failed to exhaust administrative remedies with respect to her Title VII claims against Avon Products; (2) each Plaintiff failed to establish an employment relationship with the Defendant which did not formally employ her; and (3) the NYSHRL's three-year statute of limitations bars all of Rivas's and some of Krstanoska's claims. I address each argument in turn.

### 1. Exhaustion of Administrative Remedies

Avon Products argues that Ruiz's Title VII claims against Avon Products must be dismissed because Ruiz failed to exhaust her administrative remedies by not naming Avon Products in her EEOC Charge. (Avon Products Br. 9–14.)[11]

Title VII requires a plaintiff to exhaust her administrative remedies as a precondition to filing her claims in federal court. 42 U.S.C. § 2000e-5(e)-(f); *see Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) ("Exhaustion of administrative remedies through the EEOC is an essential element of the Title VII . . . statutory scheme[] and, as such, a precondition to bringing such claims in federal court." (internal quotation marks omitted)); *see also Kilkenny v. Greenberg Traurig LLP*, No. 05 Civ. 6578(NRB), 2006 WL 1096830, at *3

---

[11] "Avon Products Br." refers to Defendant Avon Products, Inc.'s Memorandum of Law in Support of its Motion to Dismiss, filed February 25, 2019. (Doc. 49.)

(S.D.N.Y. April 26, 2006) (same). Although this requirement is a "precondition to suit," it does not operate as a jurisdictional bar. *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 384 (2d Cir. 2015).

Ruiz concedes that she did not name Avon Products in her EEOC Charge. (*See* Pls.' Opp'n 13; Eichberger Decl. Ex. 1.) However, she maintains that her Title VII claims may proceed under the "identity of interest" exception. (Pls.' Opp'n 13–16.) The "identity of interest" exception permits Title VII actions to proceed against parties who were not named in the plaintiff's EEOC charge "where there is a clear identity of interest between the unnamed defendant and the party named in the administrative charge." *Johnson v. Palma*, 931 F.2d 203, 209 (2d Cir. 1991) (citations omitted). When analyzing whether or not the identity of interest exception applies, courts consider four factors:

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named party are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Id*. at 209–10 (quoting *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir. 1977)) (alteration omitted). No one factor is dispositive. *See Percy v. N.Y. (Hudson Valley DDSO)*, 264 F. Supp. 3d 574, 590 (S.D.N.Y. 2017).

The purpose of the identity of interest exception "is to avoid frustration of Title VII's remedial goals by accommodating plaintiffs who are not well versed in the statute's procedural formalities and requirements." *Darden v. DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp. 2d 382, 389 (S.D.N.Y. 2002) (citing *Johnson*, 931 F.2d at 209); *see also Hamad v. Nassau Cty.*

*Med. Ctr.*, 191 F. Supp. 2d 286, 306 (E.D.N.Y. 2000) ("[T]he underlying concern guiding this Circuit's adoption of the 'identity of interest' exception is that certain individuals lack the legal wherewithal to identify adequately the parties responsible for the violation of their federal rights."). Courts therefore routinely decline to apply the identity of interest exception where complainants were represented by counsel familiar with the applicable law when they filed their EEOC charge. *See, e.g.*, *Darden*, 191 F. Supp. 2d at 390 ("Accordingly, because [Plaintiff ] had the benefit of counsel when he filed his EEOC complaint, and does not claim that his counsel was unversed in the law, the identity of interest exception does not apply . . . ."); *Harrington v. Hudson Sheraton Corp.*, 2 F. Supp. 2d 475, 478 (S.D.N.Y. 1998) (holding that the identity of interest exception did not apply where plaintiff was represented by counsel when she filed her EEOC charge); *see also Zustovich v. Harvard Maint., Inc.*, No. 08 Civ. 6856(HB), 2009 WL 735062, at *7 (S.D.N.Y. Mar. 20, 2009) ("[T]he Second Circuit has recognized an exception to the general rule that a defendant must have been named in the administrative complaint where the plaintiff proceeded *pro se* in the administrative proceeding and the unnamed party shares a clear identity of interest with the party that was named in the administrative complaint." (internal quotation marks omitted)).

Here, Ruiz clearly had the benefit of counsel when she filed her EEOC Charge as the charge itself identifies Wigdor LLP—Ruiz's counsel in the instant action—as her point of contact. (Eichberger Decl. Ex. 1.) Although prior representation by counsel is not necessarily dispositive in determining whether the identity of interest exception may apply, *see, e.g.*, *Senecal v. B.G. Lenders Serv., LLC*, 976 F. Supp. 2d 199, 214 (S.D.N.Y. 2013) (noting that "the Southern District of New York has often restricted the identity of interest exception to plaintiffs who filed their EEOC charges *pro se*" but observing that the Second Circuit "has yet to explicitly address

or resolve the issue"), I further find that the first, second, and fourth factors delineated in *Johnson* also militate against its application.  First, the alleged role of Avon Products could have been easily ascertained by Ruiz at the time she filed her EEOC Charge through a basic internet search or a review of Defendants' public SEC filings.  In fact, in an effort to highlight the relationship between Avon Products and New Avon, Ruiz quotes various passages of Defendants' publicly filed annual SEC forms in her opposition to Defendants' motions to dismiss, suggesting that she and her counsel were capable of accessing that information at the time Ruiz filed her EEOC Charge.  (*See* Pls.' Opp'n 11–12.)

With respect to the second factor—the similarity of the named and unnamed parties' interests—Ruiz does not sufficiently plead facts demonstrating that the interests of New Avon and Avon Products are so similar as to make naming Avon Products in the EEOC Charge unnecessary.  The Complaint is almost entirely devoid of allegations addressing the relationship between Avon Products and New Avon.  Ruiz pleads only that Avon Products owns a "minority share" in New Avon and conclusorily alleges—without offering any details—that Avon Products "continues to actively operate and participate in the Company's North American business." (Compl. ¶ 39.)  However, "conclusory, *ipse dixit* assertions are insufficient to satisfy the pleading standards of [*Twombly*]."  *Fried v. LVI Servs., Inc.*, No. 10 Civ. 9308(JSR), 2011 WL 2119748, at *5 (S.D.N.Y. May 23, 2011).  "[W]here courts have found an identity of interest between entities named in the EEOC charge and those not named, more has been required, namely, the two entities have been far more intertwined."  *Percy*, 264 F. Supp. 3d at 591 (citing *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1242 (2d Cir. 1995) (finding that where unnamed entity approved all personnel decisions at named entity, the two entities had "identical interests with respect to conciliation and compliance")); *see also Goodman v. Port Auth. of N.Y. & N.J.*,

850 F. Supp. 2d 363, 385 (S.D.N.Y. 2012) (finding second *Johnson* factor did not cut in plaintiff's favor despite allegations that named and unnamed parties were "integrated as to [plaintiff's] management and the interrelation of operations as to his job function" but where plaintiff pled no facts regarding "the degree of centralization as to the control of [defendants'] labor relations").

The fourth *Johnson* factor also weighs in favor of Avon Products as the Complaint nowhere alleges that Avon Products represented to Ruiz that its relationship to her would be conducted exclusively through New Avon. However, the third factor favors Ruiz, because, as Avon Products concedes, it has not suffered any actual prejudice given that the EEOC did not investigate or take any action in response to Ruiz's charge. (Avon Products Br. 12.) Nevertheless, courts have declined to apply the identity of interest exception at the motion to dismiss stage, even in the absence of actual prejudice. *See, e.g.*, *Ayala v. U.S. Postal Serv.*, No. 15-CV-4919 (VSB), 2017 WL 1234028, at *5 (S.D.N.Y. Mar. 31, 2017) (finding identity of interest exception inapplicable where "the first, second, and fourth *Johnson* factors militate[d] against applying" the exception), *aff'd*, 727 F. App'x 15 (2d Cir. 2018); *Goodman*, 850 F. Supp. 2d at 385 (finding no risk of prejudice to the unnamed defendant but concluding that "[t]he balance of these factors . . . counsels against applying the 'identity of interest' exception").

Because, on balance, the *Johnson* factors favor Avon Products, and in particular because Ruiz had the benefit of counsel in preparing and filing her EEOC Charge, I find the identity of interest exception inapplicable. Ruiz's Title VII claims against Avon Products are therefore dismissed with prejudice for failure to exhaust administrative remedies. *See Colquitt v. Xerox Corp.*, 546 F. App'x 26, 28 (2d Cir. 2013) (summary order) ("Because [plaintiff's Title VII] claims were not administratively exhausted, and because an amendment to add factual detail to

those claims would not cure this substantive flaw, the district court properly dismissed those claims without granting leave to replead.").

## 2. Failure to Establish an Employment Relationship

Both Defendants also contend that each Plaintiff fails to state an NYSHRL—and additionally, in Ruiz's case, an NYCHRL—claim against the Defendant which did not formally employ her. As discussed above, *see supra* Part I, Ruiz was an employee of New Avon while both Rivas and Krstanoska were employed by Avon Products. New Avon therefore contends that Rivas's and Krstanoska's claims against New Avon must be dismissed, while Avon Products argues for dismissal of Ruiz's remaining claims against Avon Products.

To plead a claim under the NYSHRL and NYCHRL, a plaintiff must allege an employment relationship between plaintiff and defendant. *See Brown v. Daikin Am. Inc.*, 756 F.3d 219, 226 (2d Cir. 2014) (explaining that "[a]n employer–employee relationship is . . . required to sustain" an NYSHRL claim); *Weerahandi v. Am. Statistical Ass'n*, No. 14 Civ. 7688(AT), 2015 WL 5821634, at *8 (S.D.N.Y. Sept. 30, 2015) (same, with respect to both NYSHRL and NYCHRL claims). Although Ruiz concedes that Avon Products is not her direct employer, and Rivas and Krstanoska concede the same with respect to New Avon, they contend that both Defendants should be considered their employers for purposes of NYSHRL and NYCHRL liability because they constitute a single "integrated enterprise" and therefore may be treated as a "single employer." (Pls.' Opp'n 8.)

"A 'single employer' situation exists where two nominally separate entities are actually part of a single integrated enterprise." *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 198 (2d Cir. 2005) (internal quotation marks omitted). "In such circumstances, of which examples may be parent and wholly-owned subsidiary corporations, or separate corporations

under common ownership and management, the nominally distinct entities can be deemed to constitute a single enterprise." *Id.* To determine whether multiple defendants operate as a single employer, courts consider the following factors: "(1) interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control." *Perez v. Westchester Foreign Autos, Inc.*, No. 11 Civ. 6091(ER), 2013 WL 749497, at *7 (S.D.N.Y. Feb. 28, 2013) (citing *Cook*, 69 F.3d at 1240). "[C]ourts applying this four-part standard in Title VII and related cases have focused on the second factor: centralized control of labor relations." *Cook*, 69 F.3d at 1240 (citation omitted). "To satisfy the single-employer test, a plaintiff need not allege that the parent exercises 'total control or ultimate authority over hiring decisions,' so long as he alleges that there is 'an amount of participation [by the parent] that is sufficient and necessary to the total employment process." *Brown*, 756 F.3d at 227 (quoting *Cook*, 69 F.3d at 1241). "The critical question in this respect is: 'What entity made the final decisions regarding employment matters related to the person claiming discrimination?'" *Fried*, 2011 WL 2119748, at *3 (quoting *Cook*, 69 F.3d at 1240).

Plaintiffs' Complaint is entirely devoid of allegations that either Avon Products or New Avon was at all involved in the other's employment decisions. Although the determination of "[w]hether two related entities are sufficiently integrated to be treated as a single employer is generally a question of fact," *Brown*, 756 F.3d at 226, where a plaintiff's allegations are so inadequate that they fail to put a defendant "on notice of the theory of employer liability," dismissal is appropriate, *Perez*, 2013 WL 749497, at *7 (citation omitted). Courts have declined to apply the single employer doctrine at the motion to dismiss stage in the face of more substantial allegations than Plaintiffs have presented here. *See, e.g.*, *Fried*, 2011 WL 2119748, at *4–5 (finding that minority shareholders in parent company did not exercise sufficient control

over subsidiary's labor relations, despite specific allegations that they were involved in search for and approval of plaintiff's replacement and also controlled representatives on parent's board who were vocal in seeking plaintiff's termination); *cf. Popat v. Levy*, 253 F. Supp. 3d 527, 540 (W.D.N.Y. 2017).

By contrast, where single employer arguments have survived a motion to dismiss, plaintiffs have pleaded far more detailed allegations. *See, e.g.*, *Brown*, 756 F.3d at 228 (finding American plaintiff's allegations sufficient at motion to dismiss stage where plaintiff alleged that parent corporation's approval "was required as to all significant actions" by subsidiary, and that parent directed subsidiary to discharge only employees who were not Japanese and prohibited subsidiary from reassigning or discharging Japanese employees); *Donahue v. Asia TV USA Ltd.*, 208 F. Supp. 3d 505, 518–19 (S.D.N.Y. 2016) (finding plaintiff alleged sufficient "commonality of hiring, firing, and supervision" between plaintiff's direct employer and another corporate defendant where board member of that corporate defendant regularly met with plaintiff to review his performance evaluations and recommended a replacement for plaintiff after telling him he should retire); *St. Jean v. Orient-Express Hotels Inc.*, 963 F. Supp. 2d 301, 309–10 (S.D.N.Y. 2013) (finding plaintiff sufficiently alleged that her direct employer was controlled by another company where managing director of controlling company made hiring decisions for her direct employer and controlling company's HR director investigated plaintiff's claims, interviewed her, and personally fired her).

Plaintiffs' Complaint dedicates only five out of 301 paragraphs to a generic overview of Avon Products' and New Avon's corporate histories—and makes no mention at all of control over employment matters—before proceeding to refer to Avon Products and New Avon collectively as "Avon" for the remainder of the Complaint. (*See* Compl. ¶¶ 38–42.) Lumping

the two Defendants together under one name is nothing more than window dressing. None of Plaintiffs' vague and conclusory allegations plausibly suggests that one entity had any involvement in the employment decisions of the other.[12] Plaintiffs face the further obstacle that Avon Products holds only a minority share in New Avon, (*see* Compl. ¶¶ 38–39 (stating that New Avon is "controlled by Cerberus Capital Management, L.P." and that Avon Products "own[s] a minority share in New Avon")), and courts in this district have observed that minority shareholders are "incapable, *by definition*, of controlling the actions" of the companies in which they hold that minority share. *See Fried*, 2011 WL 2119748, at *6 (emphasis in original); *cf. Arculeo*, 425 F.3d at 198 (noting that the "single employer" doctrine may apply in the case of a "parent and wholly-owned subsidiary").

Plaintiffs' allegations relating to the relationship between Avon Products and New Avon are so bare-bones that they do not sufficiently put Defendants "on notice of the theory of employer liability upon which the claims are based." *Popat*, 253 F. Supp. 3d at 540. For that reason, dismissal is appropriate. However, "in light of the Second Circuit's caution that whether an entity is a covered employer . . . is generally . . . a fact-based question," I will dismiss Ruiz's

---

[12] Plaintiffs' most detailed allegation regarding the interrelationship between Defendants' operations is that the "Company continues to brand itself collectively as 'Avon' in connection with its North American business. For example, online inquiries about New Avon LLC automatically are directed to the site www.avon.com." (Compl. ¶ 41.) However, prominently displayed on the "About Avon" page of that website is an explanation of the respective roles of New Avon (a company "which manufactures and distributes products under the 'Avon' name in the United States, Canada, and Puerto Rico"), and Avon Products (a company "operating in countries outside the US, Canada, and Puerto Rico"). *See About Avon*, Avon, https://about.avon.com/us-about/company/about (last visited Sept. 20, 2019).

The Complaint also cites a press release "about Avon's plan to consolidate U.S. operations to Avon's offices in Suffern, New York," (Compl. ¶ 41), but the cited press release appears to be specific to Avon Products. *See Avon Products, Inc. to Create Leaner New York Operations*, PR Newswire, https://www.prnewswire.com/news-releases/avon-products-inc-to-create-leaner-new-york-operations-300715628.html (Sept. 19, 2018) (referencing the sale of Avon Products' Rye offices in favor of consolidating operations in Avon Products' Suffern location given Avon Products' "international focus," but making no mention of New Avon, which is based in Manhattan, (*see* Compl. ¶¶ 35–40)). "If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true." *TufAmerica, Inc. v. Diamond*, 968 F.Supp.2d 588, 592 (S.D.N.Y.2013) (citation omitted). In any event, Defendants are correct that these sources make no reference to Defendants' allegedly intertwined labor relations.

claims against Avon Products without prejudice to repleading.  *See id.* (concluding that it was "difficult to interpret Plaintiff's limited factual allegations . . . as plausibly suggesting that [one defendant] played a sufficient role in the employment matters of [another defendant] to be considered a joint or single employer" but dismissing plaintiff's claims without prejudice). Rivas's and Krstanoska's NYSHRL claims against New Avon, by contrast, are dismissed with prejudice, as I find that amendment of those claims would be futile.[13]

### 3.  Statute of Limitations

Claims under the NYSHRL are generally governed by a three-year statute of limitations. *See* N.Y. C.P.L.R. § 214(2); *Taylor v. City of New York*, 207 F. Supp. 3d 293, 302 (S.D.N.Y. 2016).  Avon Products contends that Rivas's and Krstanoska's NYSHRL claims should be dismissed to the extent that they are based on conduct that occurred prior to October 3, 2015—three years prior to the commencement of this action.  (Avon Products Br. 17–19.)  Specifically, Avon Products argues that all of Rivas's claims are time barred and that all of Krstanoska's claims relating to her first pregnancy are similarly time barred as those allegations stem from incidents occurring between 2009 and early 2015—more than three years prior to the initiation of this lawsuit.  (*Id.*; Compl. ¶¶ 99–116, 172–212.)  Rivas and Krstanoska respond that their NYSHRL claims are timely because they fall within the "continuing violation" exception to the three-year statute of limitations.  (Pls.' Opp'n 16–21.)

---

[13] While the Complaint's allegations regarding the relationship between Avon Products and New Avon are woefully deficient, the few conclusory allegations on the topic suggest that, if anything, Avon Products may have exercised control over New Avon—not the other way around.  (*See* Compl. ¶ 39 (alleging that Avon Products "continues to own a minority share in New Avon and continues to actively operate and participate in the Company's North American business").)  Because Plaintiffs make no suggestion whatsoever that New Avon could have made "the final decisions regarding employment matters" relating to Avon Products employees, *Cook*, 69 F.3d at 1240, I conclude that Rivas's and Krstanoska's claims against New Avon—which was not even founded until 2016, several years after Rivas and Krstanoska began working for Avon Products, (*see* Compl. ¶¶ 38, 100, 172)—must be dismissed with prejudice.

Under the continuing violation doctrine, "if a plaintiff has experienced a continuous practice and policy of discrimination, the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001) (internal quotation marks omitted). To qualify for this exception when bringing a discrimination claim, a plaintiff must assert that at least one of the discriminatory acts in furtherance of the alleged policy of discrimination occurred within the limitations period. *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 582 (S.D.N.Y. 2011) (citing *Patterson v. Cty. of Oneida*, 375 F.3d 206, 220 (2d Cir. 2004)). However, "a series of discrete but related acts of discrimination—do not warrant application of the continuing violations doctrine." *Milani v. Int'l Bus. Machs. Corp.*, 322 F. Supp. 2d 434, 452 (S.D.N.Y. 2004); *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113–14 (2002) (explaining that "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify" and are "not actionable if time barred, even when they are related to acts alleged in timely filed charges"). Rather, "each discrete discriminatory act starts a new clock for filing charges alleging that act," although a plaintiff is not automatically barred "from using the prior acts as background evidence in support of a timely claim." *Morgan*, 536 U.S. at 113.

On the other hand, "[h]ostile [work] environment claims are different in kind from discrete acts," as "[t]heir very nature involves repeated conduct." *Id.* at 115.[14] As such, "a hostile work environment claim . . . will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the

---

[14] To state a hostile work environment claim, "a plaintiff must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [protected characteristic]." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (internal quotation marks omitted).

[statute of limitations] period." *Id.* at 122; *see also id.* at 117 ("Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.").

As a general matter, the continuing violation doctrine "is heavily disfavored in the Second Circuit and courts have been loath to apply it absent a showing of compelling circumstances." *Flores v. N.Y.C. Human Res. Admin.*, No. 10 Civ. 02407(RJH), 2011 WL 3611340, at *3 (S.D.N.Y. Aug. 16, 2011) (internal quotation marks omitted). "[T]he continuing-violation exception is applied in the same way whether the claim is under federal, state, or city law." *Bermudez*, 783 F. Supp. 2d at 582.

Turning first to Rivas's claims, I find that the Complaint's allegations specific to Rivas fail to establish a continuing violation. Rivas alleges discrimination in relation to two pregnancies. She discovered the second pregnancy in 2010 and returned from maternity leave following this pregnancy sometime in 2011. (*See* Christensen Decl. Ex. 10, ¶¶ 199, 209.) The Complaint, however, does not allege any discriminatory conduct in the years immediately following 2011. The only allegations that Rivas makes regarding the period subsequent to her 2011 return to work are that Rivas was temporarily transferred to another lab position "[s]ometime during 2014-2015," (Compl. ¶ 204), and then—sometime during 2016—Rivas sought, but was denied, a promotion and was then constructively discharged, (*see id.* ¶¶ 211–12; Pls.' Opp'n 20–21). Thus, there appears to have been at least a three-year gap between Rivas's return to work following her second pregnancy and any subsequent allegations of discrimination. A gap of this length precludes the application of the continuing violation doctrine. *See Weeks v. N.Y. State (Div. of Parole)*, 273 F.3d 76, 84 (2d Cir. 2001) ("Absent unusual circumstances, a two-year gap is a discontinuity that defeats use of the continuing violation exception."),

*abrogated on other grounds by Morgan*, 536 U.S. 101; *see also E.E.O.C. v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 867 (S.D.N.Y. 2013) (finding that "a nearly two year gap" between employee's return from maternity leave and the alleged discriminatory transfer precluded the court from concluding that the adverse employment action was the result of pregnancy discrimination); *Everson v. N.Y.C. Transit Auth.*, 216 F. Supp. 2d 71, 79 (E.D.N.Y. 2002) (finding continuing violation doctrine inapplicable where a "two-year-and-five-day period followed [discriminatory] acts with *no* incidents of discrimination"). Moreover, the Supreme Court has rejected the notion that "discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire" can serve as the basis of a continuing violation claim. *See Morgan*, 536 U.S. at 114 ("Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice." (internal quotation marks omitted)).

Although the standard for applying the continuing violation doctrine is lower in the context of hostile work environment claims, *see id.* at 115, I find that Rivas—assuming that she even has alleged a hostile work environment claim—fails to plead a continuing violation with respect to that claim. The Complaint contains no allegations supporting the notion that Rivas's 2014–2015 temporary transfer or 2016 denial of promotion and constructive discharge were "part of the same unlawful employment practice" as—or were in any way linked to—the prior alleged pregnancy-related discrimination, which occurred no later than 2011. *Id.* at 122. I therefore find that all of Rivas's claims must be dismissed as time barred.

Krstanoska does not appear to allege that she suffered any concrete adverse employment action—such as a denial of benefits or adequate compensation, transfer, demotion, or other disciplinary action, *see id.* at 114—in the period predating her return to work in October 2015 following her first pregnancy, (*see* Compl. ¶¶ 99–116). Any such discrimination claims would

be time barred as such conduct represents "a series of discrete acts, insufficient to constitute a continuing violation." *Blair v. L.I. Child & Family Dev. Servs., Inc.*, No. 16-CV-1591 (JFB) (SIL), 2017 WL 722112, at *8 (E.D.N.Y. Jan. 31, 2017), *report and recommendation adopted*, 2017 WL 728231 (Feb. 21, 2017); *see also Morgan*, 536 U.S. at 113 ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.").

However, I find that Krstanoska plausibly alleges a hostile working environment that began with the discovery of her first pregnancy in August 2014 and continued through her return to work in October 2015 and her second pregnancy, which she discovered in November 2015. Krstanoska alleges that during her first pregnancy, she was repeatedly "harass[ed]," "belittled and demeaned" by at least one of her supervisors because she refused to work with hazardous chemicals known to pose significant health risks to pregnant women. (Compl. ¶¶103–15.) After Krstanoska returned from maternity leave in October 2015, the harassment continued and she was repeatedly criticized for taking time during the workday to pump breast milk while she was breastfeeding. (*Id.* ¶¶ 151–57.) The mistreatment escalated during her second pregnancy, which began in November 2015, and continued through her constructive discharge in April 2016. (*Id.* ¶¶ 129–71.) I find that these allegations, many of which relate to conduct occurring within the statute of limitations, suggest a pattern of hostility toward pregnant women and nursing mothers sufficient to constitute a continuing violation. *See Blair*, 2017 WL 722112, at *9–10 (dismissing plaintiff's claims of pregnancy discrimination and retaliation based on discrete events predating the limitations period but permitting her hostile work environment claims to survive).

In sum, all of Rivas's NYSHRL claims are dismissed as time barred. To the extent that Krstanoska alleges discrimination claims based on activity predating October 2015, those claims

are also dismissed. Because Rivas's and Krstanoska's dismissed claims relate exclusively to conduct outside the limitations period, I find that amendment would be futile, and therefore dismiss their claims with prejudice. However, Krstanoska's hostile work environment claims survive, and her allegations regarding the period predating October 2015 are not barred to the extent that they support her claim of an ongoing hostile work environment.[15]

## V. **Motion to Strike**

Avon Products separately moves to strike allegations set forth in the Complaint relating to alleged discrimination against "Jane Smith," (*see* Compl. ¶¶ 213–52), an unnamed former employee of Avon Products who is not a plaintiff in this litigation.

### A. *Legal Standard*

Rule 12(f) of the Federal Rules of Civil Procedure "provides courts a means to remove material from a pleading that it finds 'redundant, immaterial, impertinent, or scandalous.'" *Hirsch v. Complex Media, Inc.*, No. 18 Civ. 5488 (CM), 2018 WL 6985227, at *9 (S.D.N.Y. Dec. 10, 2018) (quoting Fed. R. Civ. P. 12(f)). "[M]otions to strike are generally disfavored and will not be granted unless the matter asserted clearly has no bearing on the issue in dispute." *Kehr ex rel. Kehr v. Yamaha Motor Corp., U.S.A.*, 596 F. Supp. 2d 821, 829 (S.D.N.Y. 2008) (internal quotation marks omitted); *see also In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 218 F.R.D. 76, 78 (S.D.N.Y. 2003) ("Generally, motions to strike are viewed with

---

[15] Avon Products also argues that Krstanoska's claims fail to meet the standard set forth in Fed. R. Civ. P. 8 in that, by "lumping" Avon Products and New Avon together as a single unit, the Complaint fails to "provide specification of any particular activities by any particular defendant." (Avon Products Br. 21 (quoting *George v. Prof'l Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 449 (S.D.N.Y. 2016) (internal quotation marks omitted)).) Although Avon Products is correct that Plaintiffs refer to Defendants jointly as "Avon" throughout the Complaint, I have determined that Krstanoska has not alleged any employment relationship between herself and New Avon, *see supra* Part IV.B.2; thus, I find that any allegations in the Complaint specific to Krstanoska are necessarily addressed to Avon Products. I therefore conclude that the allegations relating to discrimination against Krstanoska provide sufficient notice to Avon Products of the claims alleged and the grounds on which those claims rest, and I deny Avon Products' motion to dismiss Krstanoska's claims for failure to satisfy Rule 8. *See Wynder v. McMahon*, 360 F.3d 73, 79 (2d Cir. 2004) (noting that "[t]he key to Rule 8(a)'s requirements is whether adequate notice is given").

disfavor and infrequently granted.").  "To prevail in such a motion, defendants must demonstrate that (1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant."  *Roe v. City of New York*, 151 F. Supp. 2d 495, 510 (S.D.N.Y. 2001) (internal quotation marks omitted).  The Second Circuit has cautioned that "[e]videntiary questions . . . should especially be avoided at such a preliminary stage of the proceedings."  *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976).

**B.** *Analysis*

Avon Products argues that Smith's allegations are immaterial to the instant lawsuit as Smith is not a plaintiff or a class representative, and allegedly cannot be a member of any of the three proposed classes because her employment was terminated no later than September 2015, which predates the earliest start date of the three proposed classes.  (*See* Compl. ¶ 256.)  As a result, Avon Products contends, Plaintiffs' sole purpose in including the Jane Smith allegations was to prejudice Avon Products.

I disagree.  Plaintiffs correctly point out that "[e]vidence of past discriminatory practices of an employer is generally relevant in employment discrimination claims."  *Abrams v. Gen. Elec. Co.*, No. 95-CV-1734 (FJS), 1997 WL 458446, at *2 (N.D.N.Y. Aug. 4, 1997).  This reasoning applies with particular force in a case such as this, where Jane Smith—a former employee of Avon Products who was also allegedly denied reasonable pregnancy-related accommodations and was terminated after disclosing she was pregnant, (Compl. ¶¶ 213–52)— appears to have been similarly situated to Plaintiffs.

Avon Products invokes *Oram v. SoulCycle LLC*, 979 F. Supp. 2d 498, 512 (S.D.N.Y. 2013), in which the court struck from plaintiff's complaint allegations of defendants' alleged

"mistreatment of customers" in an action for violation of state labor laws, on the ground that the allegations were "immaterial and irrelevant." In *Oram*, however, defendants' treatment of customers had no bearing on defendants' treatment of *employees*, which was the subject of the lawsuit. *Id.* at 501–02. Here, by contrast, Jane Smith, like Plaintiffs Rivas and Krstanoska, was an employee of Avon Products who allegedly experienced pregnancy discrimination. (Compl. ¶¶ 213–52.)[16]

Because I find that Avon Products has failed to establish that the alleged discriminatory conduct against Jane Smith "clearly has no bearing on the issue in dispute," *Kehr*, 596 F. Supp. 2d at 829 (internal quotation marks omitted), Avon Products' motion to strike the Jane Smith allegations is denied.

## VI. <u>Conclusion</u>

For the foregoing reasons, New Avon's motion to compel arbitration is DENIED. Defendants' motions to dismiss are GRANTED IN PART and DENIED IN PART. Ruiz's Title VII claims against Avon Products are DISMISSED WITH PREJUDICE, and Ruiz's NYSHRL and NYCHRL claims against Avon Products are DISMISSED WITHOUT PREJUDICE. Krstanoska's NYSHRL claims against New Avon are DISMISSED WITH PREJUDICE, and Rivas's NYSHRL claims against both Defendants are DISMISSED WITH PREJUDICE. Krstanoska's NYSHRL discrimination claims against Avon Products which relate to events occurring prior to October 2015 are DISMISSED WITH PREJUDICE. Finally, Avon Products' motion to strike allegations in the Complaint relating to Jane Smith is DENIED.

Ruiz's Title VII, NYSHRL, and NYCHRL claims against New Avon survive, as do

---

[16] Plaintiffs are also correct that each of the cases invoked by Avon Products for the proposition that anonymous pleading is improper involves a plaintiff—as opposed to a witness—who used a pseudonym. *See Doe v. Trs. of Columbia Univ. in City of N.Y.*, No. 18-cv-7831 (PAC), 2018 WL 5307479 (S.D.N.Y. Oct. 26, 2018); *Doe v. Delta Airlines, Inc.*, 310 F.R.D. 222 (S.D.N.Y. 2015); *Doe v. Del Rio*, 241 F.R.D. 154 (S.D.N.Y. 2006).

Krstanoska's NYSHRL claims against Avon Products alleging discrimination in relation to events occurring on or after October 3, 2015, or alleging a hostile work environment.[17]

The Clerk of Court is respectfully directed to terminate the motions pending at Docket Entries 45, 48, and 51.

SO ORDERED.

Dated: September 22, 2019
   New York, New York

            Vernon S. Broderick
            United States District Judge

---

[17] Although I have dismissed the sole federal claim alleged against Avon Products, I decline Avon Products' invitation that I refrain from exercising supplemental jurisdiction over Krstanoska's surviving NYSHRL claims. Because there are federal claims proceeding against New Avon (i.e., Ruiz's Title VII claim) and because Ruiz's NYSHRL and NYCHRL claims against Avon Products have been dismissed without prejudice, I find that "judicial economy, convenience, [and] fairness" do not counsel in favor of declining to exercise jurisdiction over Krstanoska's remaining state law claims. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).